517 F.2d 272
 UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Y. GARCIA, Douglas W. Albert, Bennard D. Jackson,
Gilbert Gonzalez, Jesse C. Smith, John J. Davis,
and Delbert D. Collins, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio V. ZAVALA and Carlos Avila, Defendants-Appellants.
 Nos. 74-3527, 74-3718.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 7, 1975.
 
 James A. Moore, Robert C. Hunt, Houston, Tex., for defendants-appellants in No. 74-3527.
 Ronald J. Waska, James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee in No. 74-3527.
 Jerry D. Patchen, Gerald M. Birnberg, Houston, Tex., for defendants-appellants in No. 74-3718.
 Anthony J. P. Farris, U. S. Atty., James R. Gough, Ronald J. Waska, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee in No. 74-3718.
 Appeals from the United States District Court for the Southern District of Texas.
 Before GEWIN, DYER and ADAMS,* Circuit Judges.
 GEWIN, Circuit Judge:
 
 
 1
 In these consolidated cases we review a district court's disqualification of three criminal defense attorneys because of apparent conflicts of interest. The central question concerns a criminal defendant's right to retain counsel of his own choice even though the trial court considers such counsel to be disqualified because of a conflict of interest. The distinctive aspect of this case is that the defendants do not seek to waive the right to counsel. Rather they seek to waive the Sixth Amendment guarantees which might otherwise protect them in circumstances adjudged by the district court to disqualify counsel.
 
 
 2
 The appellants (appellants or defendants) contend that their right to representation by counsel of their own choice has been violated by the district court's order preventing their selected attorneys from representing them at trial. They assert that assuming arguendo that counsel are burdened with conflicts of interest, their right to representation by counsel of their individual choice is a paramount, continuing, and inviolable right which may not be abrogated by the judgment of the trial court. We are fully conscious of the serious and delicate nature of the issue presented. A resolution of the problem requires a cautious and sensitive consideration and balancing of individual constitutional protections, public policy and public interest in the administration of justice, and basic concepts of fundamental fairness. While we remain wary of the hazards of potential conflicts of interest in this case, we conclude that even should such conflicts exist, the defendants enjoy the right to knowingly and intelligently waive any disqualification noted by the district court. Accordingly, we remand to that court for a determination as to whether the appellants in this case wish to make such a waiver in accordance with the principles herein delineated.
 
 I. FACTS
 
 3
 Appellants are members of the Houston Police Department, narcotics division, charged with a variety of federal crimes.[1] Each appellant privately retained counsel to conduct his defense; Zavala and Avila engaged Greene while Garcia, Albert, Collins, Jackson, Gonzalez, Smith, and Davis employed Moore and Hunt. The primary difficulty in this case emanates from these three attorneys' simultaneous representation of other unindicted Houston policemen, some of whom are potential witnesses against the appellants. Attorneys Moore and Hunt represent approximately fifteen other such officers, including several whom they represented when they testified before the federal grand jury which indicted Garcia and his co-defendants. Moreover, Moore was asked by the Houston Police Officers Association to be special prosecutor in the case of Zavala and Avila. While he never undertook this task, he apparently had temporary access to official, confidential records concerning the alleged criminal activities of the officers in the Houston Police Department. Greene likewise represents other Houston policemen who have been subpoenaed as witnesses against Avila and Zavala. He also previously represented one Sebastian Mirelez, a convicted felon who is a government witness against Avila and Zavala.
 
 
 4
 At arraignment in both cases, Judge Seals of the United States District Court for the Southern District of Texas admonished both groups of defendants concerning the hazards of joint representation, and each defendant replied that he wished to retain his present attorney. The government then moved the district court to consider conflicts of interest and possible disqualification of the attorneys. Prior to the commencement of trial, the original indictments, except the two naming only Garcia, were dismissed and new ones were returned. The government thereupon filed a new Motion for Determination of Conflicts of Interest before Judge Hannay.
 
 
 5
 The government's motion described three circumstances allegedly creating conflicts of interests for these attorneys: (1) representation of co-defendants; (2) Greene's prior representation of Mirelez, now a witness for the government, and (3) multiple and simultaneous representation of defendants and potential prosecution witnesses. Defense counsel and their clients reviewed the government's motion and unanimously determined to oppose it. During the subsequent evidentiary hearing, the government called two witnesses in an effort to establish the attorneys' conflicts of interest, but neither testified conclusively on this point. Affidavits from other Houston policemen indicate that Moore in fact represents potential adverse witnesses in this case. There was conflicting evidence as to whether the other members of the police department whom Greene represents had given testimony before the federal grand jury which was incriminating to either Zavala or Avila. Greene also argued that his former client Mirelez had not been subpoenaed as a government witness. The attorneys requested that the government identify any "other" adverse witnesses the attorneys represented, but the government declined, asserting privilege under Rule 16, Federal Rules of Criminal Procedure.
 
 
 6
 At the conclusion of the hearing all of the defendants filed affidavits stating that they had carefully reviewed Judge Hannay's admonitions and had fully discussed the pitfalls of dual representation with their retained counsel and "independent counsel." Zavala's statement was typical:
 
 
 7
 I have discussed these facts in detail with Mr. Greene and other attorneys, and I am fully aware that it is my right to employ other counsel if I wish to. I have read the Government's motions concerning a conflict of interest and have discussed this extensively with Mr. Greene. He has represented me continuously since March 23, 1973, and in my opinion he knows more of the facts and has a better command of the situation than any other attorney would have. To deprive me of his representation would deprive me of effective assistance of counsel, a right guaranteed me by the United States Constitution.
 
 
 8
 Various other members of the Houston Police Department described as "potential witnesses" who are also represented by the attorneys in question filed similar affidavits.
 
 
 9
 The district court, apparently determining that the Sixth Amendment guarantees of effective assistance of counsel had not been or could not be waived in these circumstances, ordered the nine defendants to retain other counsel and disqualified Greene, Moore and Hunt from further participation in this case. The court founded its conclusion on a finding that the defendants "do not as laymen fathom or foresee the professional vice and treachery pregnant in the situation at hand." The authority cited in the Memorandum and Order suggest that the district court concentrated principally on the problem of representation of co-defendants rather than simultaneous representation of defendants and potential adverse witnesses.[2]
 
 II. APPEALABILITY
 
 10
 The threshold issue in this case is whether the district court's order disqualifying the attorneys in question constitutes an appealable order. Under the principles articulated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528, 1536, we hold that the disqualification order, although not a "final judgment" in the traditional sense, involves a claim "separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." See also Tomlinson v. Florida Iron and Metal, Inc., 291 F.2d 333 (5th Cir. 1961); Tomlinson v. Poller, 220 F.2d 308 (5th Cir. 1955). Cf. American Can Co. v. Citrus Feed Co., 436 F.2d 1125 (5th Cir. 1971); Uniweld Products, Inc. v. Union Carbide Corp., 385 F.2d 992 (5th Cir. 1967). In this case, deferral of review until after completion of the trial would dissipate judicial resources and possibly jeopardize the defendants' case by prohibiting representation at trial by counsel of their choice.
 
 III. WAIVER
 
 11
 On appeal, the defendants offer two rationales for reversal. First, they contend, their attorneys' multiple representation does not subject them to conflicts of interest, and second, even if there are conflicts, as determined by the district court, these defendants may waive the right to conflict-free representation. In deciding this case, we need not actually determine whether the multiple representation evident in this case will result in ineffective assistance of counsel. Not only would such a pre-trial ruling on the appellate level be speculative and premature, it is inappropriate in the posture of this case. A finding that the defendants can and did waive their constitutional right to conflict-free representation would obviate the necessity of deciding the merits of their Sixth Amendment issue. While we find that the record presently before us does not permit a determination of whether the defendants actually did waive these Sixth Amendment protections, we conclude that they can waive such guarantees. We turn now to an examination of the rules governing waiver of constitutional rights, particularly those guaranteed by the Sixth Amendment.
 
 
 12
 Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the classic case delineating the standard for measuring an effective waiver of a constitutional right, requires that a waiver must be an "intentional relinquishment or abandonment of a known right." This standard must be applied in all cases in which the underlying claim is a federal constitutional right. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The Supreme Court refined the Johnson standard in Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 756 (1970) by requiring that valid waivers not only be voluntary but also be "knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." See also Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314; Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268; Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854; United States v. Shea, 508 F.2d 82 (5th Cir. 1975). The cases draw no distinction between waiver of the right to remain silent during interrogation, the right to confer with counsel, the right to representation by competent counsel at trial, the right to contest accusations of criminality through a plea of not guilty, the right to a jury trial, and the right to be present at trial. To do so would be to discriminate against one right in favor of another when the Constitution does not so require. While it is undisputed that federal courts must strictly enforce the Sixth Amendment right to effective assistance of counsel, neither the Supreme Court nor this circuit has intimated that this constitutional guarantee is of a "preferred" nature, deserving of any type of heightened judicial scrutiny. Thus, even though the right to competent counsel is "fundamental," Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), it may nonetheless be waived.
 
 
 13
 The Bill of Rights is a catalogue of limitations on government, ensuring that certain inalienable rights are not to be infringed by the sovereign. But the prohibitions of the first ten constitutional amendments, while designed for the protection of individuals, were not intended as mandatory proscriptions on them.[3] Individuals are free to waive the constitutional protections otherwise afforded them, regardless of their motivation, so long as the waiver is voluntary, knowing and intelligent. To be sure, federal courts should refrain from casually finding waiver of vital federal constitutional guarantees, such as the right to counsel, Cf. Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167; Johnson v. Zerbst, supra, but the government's suggestion on appeal that it is impossible as a matter of law to waive the Sixth Amendment right to effective assistance of counsel in circumstances involving serious conflicts of interest is novel and unfounded. If defendants may dispense with the right to be represented by counsel altogether, Faretta v. California, --- U.S. ---, 95 S.Ct. 2525, 44 L.Ed.2d --- (1975); McKenna v. Ellis, 263 F.2d 35 (5th Cir. 1959),[4] it would seem that they may waive the right to have their retained counsel free from conflicts of interest.
 
 
 14
 Our conclusion that defendants may waive the right to conflict-free assistance of counsel abrogates the need on this pre-trial appeal to evaluate the actual or potential ineffectiveness of counsel occasioned by alleged conflicts of interest. Rather we remand to the district court to determine whether the defendants competently and intentionally waive their Sixth Amendment protections. It is appropriate that the district court make this determination since voluntariness must depend on the particular facts and circumstances of each case.[5]
 
 
 15
 Because of the unchallenged importance of the need for adequate representation during criminal proceedings, we direct the district court to scrupulously evaluate the insistence of the defendants on the right to privately retained counsel of their choice even though the district court may discern a conflict of interest in such representation. In addition, that court must also carefully evaluate the persistent efforts of the defendants to waive any imperfections in such representation which may be apparent to the court. The trial court should actively participate in the waiver decision. The Supreme Court recognized the need for affirmative judicial involvement in the waiver process in Von Moltke v. Gillies, 332 U.S. 708, 723-24, 168 S.Ct. 316, 323, 92 L.Ed. 309, 320-21 (1948):
 
 
 16
 (A) judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.
 
 
 17
 See also Tribe, Foreward: Waiver of Constitutional Rights: Disquiet in the Citadel, 84 Harv.L.Rev. 1, 23-24 (1970).
 
 
 18
 In accordance with the foregoing principles, we instruct the district court to follow a procedure akin to that promulgated in F.R.Crim.P. 11 whereby the defendant's voluntariness and knowledge of the consequences of a guilty plea will be manifest on the face of the record. Cf. Boykin v. Alabama, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274, 280 (1969); McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418, 425 (1969); United States v. Vera, 514 F.2d 102, 104 (5th Cir. 1975); United States v. Davis, 493 F.2d 502 (5th Cir. 1974). As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. Cf. United States v. Foster, 469 F.2d 1 (1st Cir. 1972). It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." National Equipment Rental v. Szukhert, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354, 367-8 (1964). Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection. Recordation of the waiver colloquy between defendant and judge will also serve the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment "fundamental fairness" basis.
 
 
 19
 The conclusion reached in this case in no sense minimizes the constitutional guarantee of the effective and competent assistance of counsel in criminal prosecutions. We hold only that if, as a matter of fact, a defendant after thorough consultation with the trial judge knowingly, intelligently and voluntarily wishes to waive this protection, the Constitution does not prevent him from so doing.
 
 
 20
 Reversed and remanded with directions.
 
 
 
 *
 Of the Third Circuit, sitting by designation
 
 
 [1]
 Avila, Zavala, Albert, Jackson, Gonzalez, Smith, Davis, and Garcia were charged with conspiracy against the rights of citizens, deprivation of the rights of citizens, and the filing of income tax returns containing false statements. In separate indictments, Garcia was also charged with perjury before a federal grand jury and filing income tax returns which contained false statements. Zavala, Gonzalez, and Collins were indicted in yet another case for conspiracy to possess and distribute heroin and the possession and distribution of heroin
 
 
 [2]
 Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Baker v. Wainwright, 422 F.2d 145 (5th Cir. 1970), and United States v. Liddy, 348 F.Supp. 198 (D.D.C.1972), three of the cases on which the district court relied, all dealt with conflict of interest situations arising from one attorney's representation of two or more defendants. The fourth case cited in that court's opinion, United States v. Pinc, 452 F.2d 507 (5th Cir. 1971), did involve a situation in which an attorney's simultaneous representation of a defendant and a potential witness may have interfered with the development of a complete defense
 
 
 [3]
 In recognizing the right of a criminal defendant to conduct his own defense, the Supreme Court in Faretta v. California, --- U.S. ---, 95 S.Ct. 2525, 2531, 44 L.Ed.2d --- (1975), quoted with approval the following language from Adams ex rel. McCann v. United States, supra :
 What were contrived as protections for the accused should not be turned into fetters . . . To deny an accused a choice of procedure in circumstances in which he, though a layman, is as capable as any lawyer of making an intelligent choice, is to impair the worth of great Constitutional safeguards by treating them as empty verbalisms.
 . . . When the administration of the criminal law . . . is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny him in the exercise of his free choice the right to dispense with some of these safeguards . . . is to imprison a man in his privileges and call it the Constitution.
 Faretta further observes that the seminal cases establishing the Sixth Amendment right to counsel, Powell v. Alabama, supra ; Johnson v. Zerbst, supra ; Gideon v. Wainwright, supra ; Argersinger v. Hamlin, supra, must not be construed as interfering with the right to representation by counsel of one's choice:
 (I)t is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want. The value of state-appointed counsel was not unappreciated by the Founders, yet the notion of compulsory counsel was utterly foreign to them. And whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice (footnotes omitted).
 
 
 [4]
 In reaching this conclusion, we are cognizant of a line of cases indicating that the right to dispense with counsel at trial is not absolute but may be denied in appropriate circumstances. E. g., Manson v. Pitchess, 317 F.Supp. 816 (C.D.Calif.1970); Seale v. Hoffman, 306 F.Supp. 330 (N.D.Ill.1969); United States v. Davis, 260 F.Supp. 1009 (E.D.Tenn.1966). While we offer no judgment as to the cogency of these decisions, we find their rationales inapplicable to the facts of this case. Moreover, the recent decision in Faretta v. California, supra, seems to seriously erode the holdings of these cases. In the instant litigation, the defendants are seeking not to proceed pro se but rather to retain the same counsel who represented them in state criminal and federal grand jury proceedings. Furthermore, there is no clear indication that a knowing and intelligent waiver of the right to effective counsel in these circumstances would adversely affect the defendants', the prosecutor's or the public's interest in a fair trial
 
 
 [5]
 The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused
 Johnson v. Zerbst, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466.