George Edward GRAY,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 79–2453.

United States Court of Appeals,
Fifth Circuit.

May 7, 1980.

Richard J. Jauma, Staff Counsel for Inmates, Texas Dept. of Corrections, Huntsville, Tex., for petitioner-appellant.

Douglas M. Becker, Nancy M. Simonson, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before WISDOM, POLITZ and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

This appeal presents this Court with its second opportunity to confront George Edward Gray's petition for writ of habeas corpus. Initially this Court reversed the district court's finding that Gray had been denied his right to conflict-free counsel based upon new evidence offered by the State after judgment had been entered. *Gray v. Estelle*, 574 F.2d 209 (5th Cir. 1978). On remand the district court held a full evidentiary hearing on the conflict and waiver issues, and found that there was an actual conflict of interest, but that this conflict had been waived by Gray. We conclude that Gray did not waive this right and reverse.

On December 17, 1969, Gray was indicted for murder with malice. During the time that Gray was being held in the County Jail, the state district judge appointed a Houston attorney, Mr. Carl Daly[1] to represent Gray. Prior to any consultations between Daly and Gray, Mr. Terry Proctor, an attorney who also ran a typewriter rental business on the side, approached and visited with Gray in jail. During this conversation, Proctor encouraged Gray about his early release and told Gray that he thought he could win the murder case for Gray. Proctor also informed Gray of his ownership of the typewriter rental business and that he had filed a felony theft complaint against Gray in that capacity. Proctor stated that if Gray would retain him (Proctor) to handle this murder charge, he would drop the theft charge pending against Gray. Evidence in the appellate record reflects that Proctor was willing to drop the charges so that he might have the opportunity to gain criminal trial experience. 574 F.2d at 211. It was under these circumstances that Gray agreed to hire Proctor. Proctor subsequently requested that the felony theft complaint against Gray be dismissed. It was not actually dismissed, however, until after the murder trial had been completed.

Prior to the trial of the murder case, Proctor advised the state district judge that he had not been paid. The state district judge then appointed Proctor so that he might receive some payment for his services.

---

1. It is noted that appointed counsel is now Judge Carl Daly of the Court of Criminal Appeals of the State of Texas.

On the day of the trial, while the parties were waiting for the jury to be brought into the courtroom, Proctor further informed the state trial judge that at one time he (Proctor) had a felony theft complaint pending against his client. The record intimates that Proctor raised his potential conflict only after the prosecutor discovered the problem and prompted Proctor to make a full disclosure to the trial judge. On further inquiry, the judge discovered that Proctor had requested that the complaint be dismissed. As previously noted, however, the complaint was still pending in state court on the date of the murder trial.

The state trial judge then turned to Gray and asked whether he was aware of the criminal complaint. Gray responded that he knew Proctor had sworn out a complaint, but thought the matter was over since Proctor had requested that the charge be dismissed. The state trial judge then asked the defendant whether he still wanted Proctor to serve as his attorney. Gray answered that he did, and the case proceeded to trial. This discussion occurred in open court, prior to trial, and in the presence of the state prosecutor. Unfortunately, no court reporter was in the courtroom to record the discussion.

Gray was convicted and sentenced to serve 75 years in the Texas Department of Corrections. Seven years after his incarceration, he filed a petition for writ of habeas corpus in federal district court. The federal district court held a habeas corpus hearing and granted Gray's writ on March 29, 1977. On appeal, this Court reversed the federal district court's order and remanded for an evidentiary hearing to determine whether or not Gray had waived the conflict of interest of his attorney. *Gray v. Estelle*, 574 F.2d 209 (5th Cir. 1978).

On remand the federal district court conducted a second habeas corpus hearing. The federal district court and both parties recognized that Proctor had a conflict of interest. The sole issue was whether Gray had waived his right to conflict-free counsel. The State elicited evidence from two witnesses: the state trial judge and the

state prosecutor. Gray was the only witness to testify in his behalf. At the conclusion of the evidentiary hearing, the federal district court determined that Gray knowingly, voluntarily, and intelligently, after full disclosure and with approval of the state trial judge, waived the conflict of interest of his attorney, Terry Proctor. The federal district court then denied Gray's writ. We reverse.

■ The sixth amendment guarantees the right of individuals to counsel without conflicts of interest. *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). In *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the Supreme Court set forth the standard for measuring an effective waiver of a constitutional right. The Court held that a valid waiver requires an "intentional relinquishment or abandonment of a known right." *Id.* at 464, 58 S.Ct. at 1023. In *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Court refined the test. The Court held that valid waivers must be both voluntary and "knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748, 90 S.Ct. at 1469.

This Court first addressed the question of waiver of conflict-free counsel in *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). In *Garcia* the defendants in a federal criminal proceeding selected counsel to represent them. The trial court refused to allow the retained attorneys to serve as counsel because of a conflict of interest. This Court reversed, holding that defendants have the privilege of waiving their constitutional right to conflict-free counsel. This Court instructed the district court to hold a hearing on remand in order to ascertain whether the defendants were knowingly and voluntarily waiving their sixth amendment protections. This Court then detailed the procedures to be followed in making this determination, stating that district courts should adhere to a procedure "akin to that promulgated in F.R.Crim.P. 11 . . . ." *Id.* at 278. The trial judge should actively participate in the process.

The district court should address each defendant personally and advise him of the potential dangers of representation by counsel with a conflict of interest. The defendants must have the opportunity to question the court about the nature and consequences of their legal representation. Most importantly, the district court should obtain a response from each defendant indicating

> that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

*Id.*

This Court confronted the issue of waiver of conflict-free counsel in a state criminal proceeding in *Zuck v. State of Alabama*, 588 F.2d 436 (5th Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). At trial Zuck was represented by a law firm that was also representing the prosecutor in an unrelated civil matter. Zuck was convicted and his case subsequently came to this Court on a petition for habeas corpus. This Court first found (as here) that a conflict of interest existed, and then turned to the question of waiver of conflict-free counsel. The Court noted that while a state court is not bound to adhere to the *Garcia* procedures, if the record is silent on whether the defendant received the requisite *Garcia* information, the *state* must bear the burden of showing that the waiver was knowing and intelligent. *Id.* at 440. In order to meet this burden of proof, the state must show that the defendant:

> (1) was aware that a conflict of interest existed; (2) realized the consequences to his defense that continuing with counsel under the onus of a conflict could have;

and (3) was aware of his right to obtain other counsel.

*Id.*

■ In the case at bar, since the original record from the state trial court was silent, the State had the burden of establishing that Gray made a knowing and voluntary waiver of his right to conflict-free counsel. The federal district court erred in concluding that the State satisfied the three prong test set forth in *Zuck*.[2]

■ The first prong of the *Zuck* test requires that the state show the defendant was aware of the conflict. The evidence supports the district court's finding that Gray was aware of the conflict. The second requirement is that the state show the defendant was aware of the consequences of proceeding to trial with a counsel under the burden of a conflict. Nowhere in the record is there any indication that Gray knew or was informed of the potential dangers of representation by counsel with Proctor's conflict. Indeed, Gray's counsel at the second habeas corpus hearing specifically asked the state trial judge whether he had given Gray this information.

> Q DID YOU EXPLAIN TO MR. GRAY ANYTHING ABOUT THE DANGERS OF THIS TYPE CONFLICT?
>
> A I JUST ASKED HIM IF HE WANTED THIS ATTORNEY IN VIEW OF WHAT HAD JUST BEEN TOLD ME IN HIS PRESENCE TO STILL REPRESENT HIM IN THE MATTER, AND HE ADVISED ME, YES, THAT HE DID.

Merely ascertaining that Gray wanted to go to trial with Proctor as his counsel is not sufficient. Constitutional rights may only be knowingly and intelligently waived. *Johnson v. Zerbst*. Where the original trial record is silent, the state has the burden of proving that the defendant realized the dangers the conflict posed to his defense. *Zuck*. This court will not presume that a defendant had this knowledge. In the case

---

**2.** Because this Court finds that the three part *Zuck* test was not satisfied, it is not necessary to address the question of whether a defendant could ever make a voluntary waiver of this

constitutional right when counsel is holding a pending felony complaint over his head like the sword of Damocles.

at bar, the State failed to prove that Gray was aware of the dangers of continuing with counsel under the onus of a conflict.

The third *Zuck* requirement is that the state establish that the defendant was aware of his right to obtain other counsel. Once again, there is no evidence in the record to show that Gray knew he was entitled to a different attorney. The State also failed to meet its burden of proof on this issue.

The federal district court concluded that the State did prove Gray was aware of this right. The judge reasoned that since the state court had previously appointed counsel for him, Gray must have been aware of the trial court's power to appoint an attorney to replace Proctor. We do not find this reasoning persuasive.

The initial appointment of counsel came early in the criminal proceeding. It may be that this appointment indicated to Gray that the trial court had the power to appoint counsel at any time. It seems more likely, however, that Gray would not infer from this appointment that *on the day of trial* it was within the judge's discretion to appoint new counsel. Additionally, even if Gray had wanted a new lawyer, it cannot be presumed that he knew that the trial judge had the power to postpone the trial which was set for that very day. Gray may have felt that it was in his best interest to continue with Proctor, who had some knowledge of the facts, rather than switch on the day of trial to a conflict-free counsel who was unfamiliar with any aspect of the case. In short, the fact that Gray once had counsel appointed for him does not establish that he was aware of his right to have new counsel appointed at this particular time and under these particular circumstances.

The State has failed to show that Gray knowingly and voluntarily waived his right to conflict free counsel. The judgment of the district court denying habeas corpus relief is reversed. It is ordered that petitioner George Edward Gray be released from custody unless the State of Texas elects to retry him within ninety (90) days of the issuance of this Court's mandate.

REVERSED.