**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Andrew PETZ, Defendant-Appellant.**

**No. 84-5032.**

United States Court of Appeals, Eleventh Circuit.

July 5, 1985.

---

Lee Osborne and William Herbert Bishop in possessing marijuana with intent to distribute while aboard a vessel of the United States in violation of 21 U.S.C. § 955a(a) and 18 U.S.C. § 2; conspiracy to possess marijuana with intent to distribute in. violation of 21 U.S.C. §§ 955a(a) and 955c; conspiracy to import marijuana into the United States in violation of 21 U.S.C. §§ 952(a) and 963; and attempting to import marijuana into the United States in violation of 21 U.S.C. §§ 952 and 963 and 18 U.S.C. § 2. We affirm without prejudice to defendant's right to renew his waiver of conflict of interest claim in a collateral proceeding.

## I. FACTS

Roy E. Amos and Andrew Petz were indicted for the above-listed offenses on June 30, 1983. The persons Petz and Amos were alleged to have aided and abetted, Osborne and Bishop, were convicted of or pled guilty to offenses arising from the same conspiracy in 1981. Just prior to jury selection, the district court discovered that Petz' counsel had previously represented Bishop, a witness who was scheduled to testify for the government in Petz' case. Realizing that there was a strong likelihood that a conflict of interest might develop at trial, the district court conducted the following examination:

> THE COURT: Mr. Petz, I am advised by Mr. Grusmark that he formerly represented Mr. Bishop ...
>
> THE COURT: and that an attorney-client relationship existed between you, that those two persons, it would appear there may well be some form of a conflict existing that he would not be able to represent you with all the vigor necessary.
>
> Are you aware of that?
>
> MR. PETZ: Yes.
>
> THE COURT: Have you discussed it thoroughly?
>
> MR. PETZ: Yes.
>
> MR. KEHOE: He said he was there representing Osborne, both of them.

Mary Catherine Bonner, Fort Lauderdale, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Gregory W. Kehoe, Linda Collins-Hertz, David O. Leiwant, David H. Lichter, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before VANCE, ANDERSON and HENLEY [*], Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Andrew Petz ("Petz") appeals from his convictions for: aiding and abetting Earl

[*] Honorable J. Smith Henley, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

THE COURT: I do not know anything.

MR. KEHOE: In the first count.

THE COURT: The same thing goes, he contends he also represented Earl Osborne.

They will be witnesses in this case and you specifically waive any objection to your counsel?

MR. PETZ: Definitely.

THE COURT: Representing him.

Do you do so with your eyes wide opened? I told you it might well be, not on its face, a conflict.

MR. PETZ: Yes.

THE COURT: Do you understand he may not be able to cross-examine these witnesses as thoroughly as some independent attorney might?

MR. PETZ: He explained all the ramifications to me.

THE COURT: Still you wish to go ahead?

MR. PETZ: Yes, I do.

On appeal, Petz argues that his attempted waiver of his right to conflict-free counsel was ineffective in that the waiver failed to meet the requirements articulated in *United States v. Garcia*, 517 F.2d 272 (5th Cir.1975).[1] Petz also asserts on appeal a challenge to his jury instructions.

## DISCUSSION

 A criminal defendant's Sixth Amendment right to effective assistance of counsel is violated where the defendant's attorney has an actual conflict of interest which adversely affects his performance. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The government does not argue that there was no actual conflict of interest. *United States v. Garcia* held, however, that despite the Sixth Amendment's guarantee of effective assistance of counsel, a criminal defendant could waive this right by choosing to proceed to trial with an attorney who had a conflict of interest. The *Garcia* court also stated, however, that before allowing a de-

fendant to waive the right to conflict-free assistance of counsel, certain procedures should be followed:

[W]e instruct the district court to follow a procedure akin to that promulgated in Fed.R.Crim.P. 11 whereby the defendant's voluntariness and knowledge of the consequences of a guilty plea will be manifest on the face of the record.... As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.... It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." ... Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection. Recordation of the waiver colloquy between defendant and judge will also serve the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment "fundamental fairness" basis.

*Garcia*, 517 F.2d at 278 (citations omitted).

In the habeas corpus context, *Garcia* has been interpreted to require that the defendant:

---

**1.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

(1) was aware that a conflict of interest existed; (2) realized the consequences to his defense that continuing with counsel under the onus of a conflict could have; and (3) was aware of his right to obtain other counsel.

*Gray v. Estelle,* 616 F.2d 801, 804 (5th Cir.1980) (quoting *Zuck v. State of Alabama,* 588 F.2d 436, 440 (5th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979)).

It is clear that the *Garcia* hearing in the instant case met the first two requirements enunciated in *Gray.* Petz was certainly aware of the conflict of interest, and the district court specifically informed Petz that his attorney would, in all likelihood, be unable to cross-examine the government's witnesses as thoroughly as independent counsel.

Whether the third requirement—that Petz was aware of his right to obtain other counsel—has been satisfied is a more troublesome question. It is true that Petz was not expressly advised by the court that he had the right to consult on the matter with independent counsel, or that he had the right to another trial attorney if his current one were disqualified. The government argues, however, that Petz was nonetheless aware of his right to independent counsel. The government objected to Petz' current counsel continuing in the case, because of the conflict of interest. The district judge personally addressed Petz, inquiring whether or not he was aware of the conflict, whether or not he was aware that his present attorney might not be able to cross-examine the witnesses (the attorney's former clients) "as thoroughly as some independent attorney," and whether or not Petz still wished to go ahead with his present attorney notwithstanding that knowledge. The government argues that necessarily implicit in those questions from the bench was the fact that Petz would not be required to continue with his present counsel, and that he was entitled to independent counsel.

Petz argues that *Gray v. Estelle* is inconsistent with the government's approach. In *Gray,* the defendant was asked on the day of trial whether he was aware of his attorney's conflict of interest, and whether he still wanted the attorney to continue. The state argued that since the state trial court had previously appointed counsel for defendant Gray, he must have been aware of the trial court's power to appoint another attorney. The former Fifth Circuit rejected the argument and stated:

> The initial appointment of counsel came early in the criminal proceeding. It may be that this appointment indicated to Gray that the trial court had the power to appoint counsel at any time. It seems more likely, however, that Gray would not infer from this appointment that *on the day of trial* it was within the judge's discretion to appoint new counsel. Additionally, even if Gray had wanted a new lawyer, it cannot be presumed that he knew that the trial judge had the power to postpone the trial which was set for that very day. Gray may have felt that it was in his best interest to continue with Proctor, who had some knowledge of the facts, rather than switch on the day of trial to a conflict-free counsel who was unfamiliar with any aspect of the case. In short, the fact that Gray once had counsel appointed for him does not establish that he was aware of his right to have new counsel appointed at this particular time and under these particular circumstances.

*Id.* at 805 (emphasis in original).

■ Although the prosecutor's objection to the continuation of Petz' present counsel, and the district judge's discussion with Petz—referring to independent counsel and inquiring whether Petz wished to proceed with present counsel—provide at the least a very strong inference that Petz knew he had the right to independent counsel, we are not prepared to say on this record that such understanding is "clear, unequivocal and unambiguous," which is the standard by which the waiver must be tested. *Garcia,* 517 F.2d at 278. Moreover, there was no mention at all that Petz would have been entitled to a continuance to permit independent counsel to prepare. Although Petz may have realized that the right to a

continuance was implicit in the district judge's colloquy, we cannot conclude that the implication was "clear, unequivocal and unambiguous." Moreover, *Gray* suggests that it would be inappropriate to presume that Petz "knew that the trial judge had the power to postpone the trial which was set for that very day." [2]

Having concluded that the present record on appeal does not establish a "clear, unequivocal and unambiguous" waiver, there is some indication in our precedent that a simple reversal is the appropriate remedy. In *Garcia*, the court "instruct[ed] the district court to follow a procedure ... whereby the defendant's voluntariness and knowledge of the guilty plea will be manifest *on the face of the record.*" *United States v. Garcia*, 517 F.2d at 278 (emphasis added). Moreover, in *United States v. Mahar*, 550 F.2d 1005, 1009 (5th Cir.1977), this court's predecessor "serve[d] notice upon all courts in our jurisdiction ... that the ambivalence in a situation such as this must not arise again." Subsequently, in *United States v. Martinez*, 630 F.2d 361 (5th Cir.1980), when faced with a conflict of interest on the part of trial counsel, the former Fifth Circuit simply reversed the conviction, without giving the government an opportunity to prove a valid waiver either on remand or in collateral proceedings.

However, in *Martinez*, the trial judge had failed to address the defendant *at all* on the subject of waiver. Unlike *Martinez*, the district judge here did address the defendant personally, and came very close to satisfying the *Garcia* requirements. In this case, the record provides strong inferences that Petz did in fact possess the necessary understanding and did in fact make a knowing and intelligent waiver; the record falls short only in its failure to meet the "clear, unequivocal and unambiguous" standard. Under these circumstances, we conclude that it would best serve the interests of justice to defer the resolution of this waiver issue to a collateral proceeding. Thus, we decline at this time to resolve the waiver issue. Petz is free to raise the issue in collateral proceedings, at which time the government will have an opportunity to prove that Petz did in fact make a knowing and intelligent waiver.[3]

Petz also asserts a challenge to his jury instructions, which we find to be without merit and to warrant no discussion. With respect to that issue, we affirm.

Thus, the decision of the district court is AFFIRMED without prejudice to defendant's right to renew his waiver of conflict of interest claim in a collateral proceeding.

AFFIRMED.

---

2. The government attempts to distinguish *Zuck v. Alabama*, 588 F.2d 436 (5th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979), and *Gray v. Estelle, supra*, by noting that both cases involved habeas petitions where the state court record was silent on whether the defendant received the requisite *Garcia* information. In such a situation, the state bears the burden of showing that the defendant knew that a conflict existed, that he realized the consequences of the conflict, and that he realized that he had the right to obtain other counsel. *Zuck*, 588 F.2d at 440. The government then argues that since there is a record of the *Garcia* hearing in the instant case, there is no requirement to affirmatively show that the appellant knew of his right to obtain other counsel. We disagree. The fact that both *Gray* and *Zuck* were habeas cases renders compliance with the requirements enunciated in those cases even more of a necessity since the court was determining the minimal standards for a constitutionally sufficient waiver. If the states are constitutionally required to prove that the accused knew of his right to outside counsel, *a fortiori*, the federal courts must do at least as much.

3. Other courts have deemed it appropriate to handle this problem in a similar fashion. *Wood v. Georgia*, 450 U.S. 261, 273–74, 101 S.Ct. 1097, 1104–05, 67 L.Ed.2d 220 (1981) (remanding case to determine whether actual conflict of interest existed and, if so, whether there was a valid waiver of conflict); *United States v. Winkle*, 722 F.2d 605, 611, 612 & n. 12 (10th Cir.1983) (same); *United States v. White*, 706 F.2d 506, 511–12 (5th Cir.1983) (Garwood, J., dissenting) (arguing that post-conviction remedies or a remand for an evidentiary hearing were appropriate).