UNITED STATES of America,
Plaintiff–Appellee,

v.

Angel RODRIGUEZ, Juan Carlos Fernandez, Raphael Guelbenzo, Jesus Rodriguez, Santiago Rodriguez, Defendants–Appellants.

No. 89–5831.

United States Court of Appeals,
Eleventh Circuit.

Feb. 3, 1993.

Benjamin S. Waxman, Wiener, Robbins, Tunkey & Ross, P.A., Miami, FL, for A. Rodriguez.

Benedict P. Kuehne, Sonnett Sale & Kuehne, Miami, FL, for Fernandez.

Maria I. Sampedro–Iglesia, Carlos Diaz–Padron, P.A., Coral Gables, FL, for J. Rodriguez and Guelbenzo.

James R. Gailey, Federal Public Defender, Linda M. Osberg and Paul M. Rashkind, Asst. Federal Public Defenders, Miami, FL, for S. Rodriguez.

Linda Collins Hertz, Dawn Bowen, Lisa T. Rubio, Asst. U.S. Attys., Miami, FL, for plaintiff-appellee.

Before FAY and EDMONDSON, Circuit Judges, and HILL, Senior Circuit Judge.

PER CURIAM:

Attorney Peter Golburgh defended three brothers—Angel, Lazaro and Santiago Rodriguez—charged in a wide-ranging marijuana importation and distribution conspiracy. The jury acquitted Lazaro, but found Angel and Santiago guilty on some of the counts. On appeal, Angel and Santiago argue that the joint representation violated their rights to effective counsel.[1] Because the defendants fully consented to this joint representation at a pre-trial hearing, we AFFIRM.

*Factual and Procedural Background*

Before the start of the conspiracy trial, the district court tried to make certain that the three Rodriguez brothers understood, and consented to, their joint representation by Golburgh.

The judge asked defendants whether they believed that there was any conflict of interest:

The Court: I am going to ask Mr. Santiago Rodriguez, do you know of any reason why Mr. Golburgh should defend your brothers more vigorously than you?

Defendant [Santiago] Rodriguez: I don't think there is any reason.

The Court: And is there any difference—

Defendant [Santiago] Rodriguez: He can take all 3 of us.

The Court: Are there any differences in your defense that you would present from the defenses that your brothers would present?

Defendant [Santiago] Rodriguez: I don't think there is any difference.

.  .  .  .  .

The Court: Mr. Angel Rodriguez, how about you, do you know of any reason—

Defendant [Angel] Rodriguez: I don't see any reason, sir.

The Court: —why he would have to do more or less for you then [sic] for your brothers?

Defendant [Angel] Rodriguez: We are all the same. He's going to have to fight for the 3 of us.

The Court: As far as your defenses are concerned, are they different from your brothers?

---

1. Defendants also argue that the district court abused its discretion in failing to sever their trials, that the court erred in admitting kidnapping evidence and coconspirator statements, that the evidence was insufficient to support the convictions, that a material variance existed between the conspiracy charge and evidence presented at trial, and that one of the sentences was infirm. These contentions lack merit.

Defendant [Angel] Rodriguez: No, sir.[2]

The Court next asked the defendants whether they wanted Golburgh to represent them and whether they knew that they had the right to separate counsel:

The Court: Now, do each of you want Mr. Golburgh to represent you?

Defendant Angel Rodriguez: Yes, sir.

Defendant Santiago Rodriguez: Yes.

Defendant Lazaro Rodriguez: Yes.

The Court: Do you understand that you have the right to have separate counsel if you wish to?

Defendant Angel Rodriguez: Yes, we do understand.

Defendant Lazaro Rodriguez: Yes.

The record indicates that Santiago did not answer the second question, although Santiago does not contend he never heard the second question. The prosecutor then raised the concern that the government might have more evidence against Angel—the alleged ringleader—than against the other defendants:

Ms. Kegerreis [the prosecutor]: Your Honor, perhaps the court might assist. What I would like is for the defendants to waive any potential conflict or any potential defense they may have, depending on the weight of the evidence.

I think they should be aware that the evidence may be different as it pertains to each of them and that having the same attorney may result in some spill over prejudice and I would like them to be advised that they waive whatever prejudice may occur as a result of having the same attorney, which I think is something they should be advised of.

The Court: What Ms. Kegerreis is saying is this: She is saying the Government has more evidence against one of you then [sic] against the other two and that Mr. Golburgh is going to have to fight that evidence and try to defend against it.

She is suggesting that it is possible that his representing the one who has more evidence presented against him may in some way reflect on your cases.

When I say reflect on your cases, I think what she is saying is that the fact that the Government will present more evidence against Angel, I guess it is—

Mr. Golburgh: Correct.

The Court: —will affect you because you have the same lawyer. Now, I don't know whether or not that will we [sic] the case. I don't know what Mr. Golburgh is going to present, but it is something you should think about and if you understand that, and if you, nonetheless, wish Mr. Golburgh to represent you, you may have Mr. Golburgh representing all 3 of you.

Defendant Santiago Rodriguez: I do for myself insist on Mr. Golburgh.

Defendant Lazaro Rodriguez: I do, too.

The Court: Mr. Angel Rodriguez?

Defendant Angel Rodriguez: I do, sir.

### No Sixth Amendment Violation

■ On appeal, both Angel and Santiago contend that the joint representation involved an actual conflict of interest that affected each of them adversely. Both defendants argue that separate representation would have enabled a "blame-shifting" strategy, in which culpability could have been attributed to the other defendants.[3]

---

**2.** At trial, Golburgh's defense strategy focused on challenges to the credibility of government witnesses and did not distinguish among these three co-defendants.

**3.** Defendants also advance a different kind of conflict of interest issue. They say that Arthur Newman, a disbarred attorney, was closely associated with Golburgh in the defense and that Newman, as a potential witness and possible coconspirator, was disqualified from representing defendants. Therefore, defendants say Golburgh was also disqualified. *See generally Unit-*

*ed States v. Tatum,* 943 F.2d 370, 378–79 (4th Cir.1991) (trial counsel had vicarious conflicts due to close association during trial with other counsel who had conflict); *United States v. Melo,* 702 F.Supp. 939 (D.Mass.1988) (discussing conflicts that arise where attorney representing defendants at trial was involved with alleged representation of conspiracy members during conspiracy); Florida Bar Rules 4-1.7, 4-1.10, 4-3.7.

Defendants did not raise this issue in district court; and we decline to consider it on appeal, but without prejudice to a later 28 U.S.C. § 2255

A criminal defendant's right to effective assistance of counsel is violated where the defendant's attorney has an actual conflict of interest that affects the defendant adversely. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *United States v. Petz*, 764 F.2d 1390, 1392 (11th Cir.1985).

■ A defendant may waive this right by choosing to proceed to trial with an attorney who has an adverse conflict of interest. *United States v. Garcia*, 517 F.2d 272, 276 (5th Cir.1975). "Thus, even though the right to competent counsel is 'fundamental,' [footnote omitted], it may nonetheless be waived." *Id.* A determination that defendants have waived the right to conflict-free counsel disposes of the need to evaluate the actual or potential ineffectiveness of counsel caused by the alleged conflicts of interest. *Id.* at 277. "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Id.* at 277 n. 5, quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938).

■ A defendant's waiver must be established by "'clear, unequivocal, and unambiguous language.'" *Id.* at 278. The record should show, in some way, that the defendant was aware of the conflict of interest; realized the conflict could affect the defense; and knew of the right to obtain other counsel. *See United States v. Petz*, 764 F.2d 1390, 1393–94 (11th Cir.

1985); *Garcia*, 517 F.2d at 278 (describing procedure to obtain waiver). Although the court should try to elicit narrative replies, "[m]ere assent in response to a series of questions from the bench" may in some cases constitute adequate waiver. *Id.*

■ *Angel.* Angel Rodriguez seemed to understand the possible conflict, acknowledged that he had the right to separate counsel, and nonetheless wanted Golburgh to represent him. Given the court inquiry and Angel's narrative responses, the record establishes that Angel consented to the joint representation.

■ *Santiago.* Santiago Rodriguez believed that there would be no important conflict of interest and insisted that Golburgh represent him. The Court expressly informed Santiago of some of the risks and of his right to separate counsel.

The most difficult issue concerns whether Santiago knew of his right to separate counsel, because he did not respond to the judge's question on this point. Nevertheless, a review of "the particular facts and circumstances surrounding the case" shows that Santiago was aware of this right. Santiago's insistence on Golburgh, which came shortly after the judge's remarks on the right to separate counsel, shows that Santiago had a "clear, unequivocal, and unambiguous" understanding of his option to have alternative representation.[4]

The record supports the government's claim that Angel and Santiago made informed decisions to retain Golburgh.[5] As a result of these decisions, defendants

petition. Newman's exact role in this trial will need to be developed factually before his acts can be used to justify setting aside these convictions.

4. Lazaro, whose overall situation was very similar to Santiago's, actually changed his mind and requested a separate counsel the next day. Although Lazaro ultimately chose to keep Golburgh, his request indicates that the judge's instructions were sufficient for defendants to have a full understanding of their Sixth Amendment rights.

5. It is instructive to compare the details of this case with *United States v. Petz*, 764 F.2d 1390 (11th Cir.1985), where we concluded that the

evidence fell just short of the "clear, unequivocal, and unambiguous" threshold.

In *Petz*, the district court did make the defendant aware of his counsel's conflict of interest and specifically informed the defendant that his counsel would be less thorough in some of his cross-examinations—just as the judge in this case made Angel and Santiago aware of the conflict and of some of its consequences. Unlike this case, however, the judge in *Petz* never expressly informed Petz of his right to separate counsel; as a result, Petz's *Garcia* hearing was inadequate.

waived any claims resulting from an adverse conflict of interest in this joint representation. The judgment of the District Court is AFFIRMED.