[No. E016804. Fourth Dist., Div. Two. Jan. 22, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE LUIS PASTRANO, Defendant and Appellant.

*Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## COUNSEL

Michon M. Hinz, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HOLLENHORST, Acting P. J.—Defendant, Jose Luis Pastrano, was charged with murder pursuant to Penal Code section 187, subdivision (a).[1] Three codefendants were charged with accessory after the fact (§ 32), and one codefendant was also charged with possession of a controlled substance pursuant to Health and Safety Code section 11377, subdivision (a). It was also alleged that defendant personally used a handgun in the commission of the murder. (§ 12022.5, subd. (a).)

On April 25, 1995, pursuant to a plea agreement, defendant pled guilty to second degree murder and admitted the firearm allegation. He later made a motion to withdraw his plea; however, on June 14, the trial court denied the motion. Subsequently, defendant was sentenced to a total term of 20 years to life in state prison.

On August 4, 1995, defendant appealed the judgment and requested a certificate of probable cause. The trial court denied defendant's request on August 17. However, defendant renewed his request for a certificate of probable cause on November 29, and on January 25, 1996, the trial court granted defendant's request.

On appeal, defendant challenges the validity of his plea on the ground that there was a conflict of interest between his attorney and codefendants' attorneys.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

## FACTS[2]

In the afternoon of November 10, 1994, Joseph Roberts, his girlfriend and his cousin were driving in a Ford Thunderbird in Rialto, California. Nathaniel Hernandez, a codefendant, and defendant were driving in a Chevrolet Malibu Classic with Linda Mindiola, Melinda Limon, and Erica Dominguez in the backseat. At some point the Thunderbird was behind the Malibu. The girls in the Malibu were "flipping off" and throwing hand gestures at the occupants in the Thunderbird. Ms. Limon thought "there were some hard looks thrown" by the girl in the Thunderbird, so she asked codefendant to pull over so she could "kick their ass."

Defendant told codefendant to pull over. Once the Malibu had stopped, defendant got out of the car and pointed a gun at the Thunderbird. He fired and a bullet hit and killed Jennifer Balber, who had been going house to house in the neighborhood reading gas meters. The Malibu then took off and Ms. Limon told defendant that he had shot someone because she saw a lady lying on the ground.

Defendant and the other occupants of the Malibu drove to a friend's house. After verifying that someone had been shot, codefendant hid the Malibu in the garage of a vacant residence near the friend's house. Defendant gave his gun to Verlon Baker, another codefendant, to hide.

Defendant was subsequently interviewed by the police following a *Miranda*[3] warning and waiver. He said the gun was malfunctioning and that he just tapped the trigger and it fired. Defendant said he was not attempting to shoot at the car, but only at the tire.

## IS DEFENDANT'S PLEA VALID?

Defendant's sole challenge on appeal concerns the validity of his plea. He claims that it is not valid due to potential and actual conflicts of interest. In support of his contention he argues that (1) his attorney was operating under a multiple-conflicts contract panel in which four codefendants were represented by four "associated" attorneys operating as "independent contractors," but supervised by one lead attorney, and (2) his plea was part of a package deal with his codefendants. Respondent initially contends that defendant's appeal should be rejected because he has waived his right to appeal as part of his plea agreement. Assuming there was no waiver, respondent argues that the trial court did not abuse its discretion in denying defendant's motion to withdraw his plea.

---

[2]The facts are taken from the preliminary hearing.

[3]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

We begin our analysis with the waiver issue. In defendant's change of plea form, he read and initialed the condition stating, "I waive and give up any right to appeal from the conviction and judgment in my case." Additionally, he was advised of and waived his *Boykin-Tahl*[4] rights. Generally speaking, a defendant may waive his right to appeal as a part of the plea agreement. (*People* v. *Panizzon* (1996) 13 Cal.4th 68 [51 Cal.Rptr.2d 851, 913 P.2d 1061]; *People* v. *Vargas* (1993) 13 Cal.App.4th 1653, 1658-1660 [17 Cal.Rptr.2d 445].) However, can a defendant waive his Sixth Amendment right to conflict-free representation?

California Rules of Professional Conduct, rule 3-310 (C) provides, in relevant part, that "[a] member shall not, without the informed written consent of each client: [¶] (1) [a]ccept representation of more than one client in a matter in which the interests of the clients potentially conflict . . . ." This rule requiring attorneys to avoid representation of adverse interests was established for public policy reasons, i.e., without such rule, public confidence in the integrity and impartiality of the criminal justice system would be adversely affected. (Cf. *People* v. *Conner* (1983) 34 Cal.3d 141, 146 [193 Cal.Rptr. 148, 666 P.2d 5].) Moreover, without conflict-free representation, it is unlikely that the defendant received a fair trial, or in this case, a fair plea agreement. (Cf. § 1424; *People* v. *Conner, supra,* 34 Cal.3d 141, 147.)

Nonetheless, "*United States* v. *Garcia,* 517 F.2d 272 (5th Cir.1975) instructs trial courts on the approach to take in assuring the protection of the sixth amendment: before permitting a defendant to waive the right to conflict-free counsel, the court must 'address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.' [Citations.] [¶] Absent such a waiver of the sixth amendment right, a defendant is entitled to representation free of actual conflict." (*U.S.* v. *Khoury* (11th Cir. 1990) 901 F.2d 948, 967-968.)

Applying the above to the facts of this case, we conclude that defendant did not waive his right to conflict-free representation when signing the

---

[4]*Boykin* v. *Alabama* (1969) 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274] and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].

change of plea form. Accordingly, we address the merits of defendant's appeal.

"Penal Code section 1018 provides: 'On application of the defendant at any time before judgment the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice.' . . . [¶] Withdrawal of a guilty plea is left to the sound discretion of the trial court. A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion. [Citation.]" (*People* v. *Nance* (1991) 1 Cal.App.4th 1453, 1456 [2 Cal.Rptr.2d 670].) Turning to the instant case, we find no abuse of discretion.

At the trial level, defendant speculated that his counsel was not conflict free. First, he introduced into evidence the conflicts contract between the County of San Bernardino, on the one hand, and an independent attorney on the other, and argued that it was "not unlike a public defender contract, where one lawyer is referred to as the conflict panel, but what the contract refers to as the attorney has really employed other attorneys. He supervises them and he provides them with investigators, provides them with the terms set forth in the contract." Based upon this contract, defendant analogized the panel to a law firm or the public defender's office contending that there was insufficient independence between the attorneys representing each of the codefendants to guarantee conflict-free representation. We disagree.

"To establish the 'predicate' for a constitutional violation a defendant must be able to show that his lawyer 'actively represented conflicting interests. . . .' [Citations.] Not only must a defendant demonstrate actual conflict, but he must also show that the actual conflict 'had an adverse effect upon his lawyer's representation.' [Citation.]" (*U.S.* v. *Khoury, supra,* 901 F.2d 948, 968.) Here, other than defendant's mere speculation, he offered no evidence to support his claim that each of the codefendant's attorneys was operating like an associate in a law firm.

Defendant contends that because the attorneys shared investigative services, office space, and support staff, we must conclude that they were not sufficiently independent of each other. Not so. Many sole practitioners share investigative services, office space, and support staff; however, they maintain their own office, phone number, letterhead, pleading paper, and business cards. They hold themselves out as sole practitioners and they keep separate confidential files, none of which are cross-accessible. Moreover, the conflicts contract specifies that the contract may be terminated by an attorney's failure to observe the Rules of Professional Conduct, including rule 3-310.

Thus, absent any evidence to the contrary, we presume that the attorneys in the instant action maintained sufficient independence from each other and acted ethically when representing each codefendant. (Cf. *People* v. *Christian* (1996) 41 Cal.App.4th 986, 1000 [48 Cal.Rptr.2d 867]; *Castro* v. *Los Angeles County Bd. of Supervisors* (1991) 232 Cal.App.3d 1432, 1442 [284 Cal.Rptr. 154].)

Assuming the conflicts contract alone was not enough to establish a conflict of interest between the attorneys, defendant also argues that an actual conflict occurred when a codefendant, and friend of defendant, had his plea bargain conditioned upon defendant's plea, i.e., defendant complains that his plea was part of a package deal with his codefendants. Again, we disagree. It is not inherently wrong to offer package deals in cases involving multiple defendants. It is common knowledge that the district attorney's office usually does so. The drawback of not doing so and entering into plea bargains with less than all the codefendants is the risk of insufficient evidence to prove the case against the remaining codefendant(s). The risk results in some, or all, of the codefendants getting off lightly, or walking, including the major culprit in the offense. Accordingly, most package deals are all or nothing.

Additionally, at defendant's change of plea hearing, he never mentioned any promises which were made to any codefendants which were contingent upon defendant's plea. Instead, the only promise given was the reduction of defendant's charge from first degree to second degree murder in return for a plea.

For the above reasons, we conclude that the trial court did not abuse its discretion in denying defendant's motion to withdraw his plea.

### DISPOSITION

The judgment is affirmed.

Richli, J., and McDaniel, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied April 16, 1997. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.