Leonard EPPS

v.

UNITED STATES of America.

Civ. No. Y–89–808.
Crim. No. Y–85–0547.

United States District Court,
D. Maryland.

Jan. 16, 1990.

Leonard Epps, pro se.

Charles P. Scheeler, Asst. U.S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, Senior District Judge.

Petitioner Leonard Epps, an inmate at the Lewisburg Federal Prison, Lewisburg, Pennsylvania, has filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. In his motion, Epps raises five grounds for relief: (1) denial of his right to the lawyer of his choice; (2) improper conduct of jury voir dire; (3) the knowing use of false evidence by the government; (4) insufficient evidence to prove citizenship under 18 U.S.C. § 241; and, (5) ineffective assistance of counsel.

On November 8, 1985, a federal grand jury sitting in the District of Maryland indicted Epps, along with co-defendants Maurice Proctor and Timothy Wallace, charging all three with the use of a firearm in a crime of violence, 18 U.S.C. § 924(c) and with conspiracies to violate civil rights, to tamper with a witness and to retaliate against a witness. 18 U.S.C. §§ 241, 1512 and 1513. The charges related to the September 2, 1985 shooting death of William Player, a government informant. A few days prior to his death, Mr. Player had testified before a grand jury regarding a drug transaction involving Maurice Proctor. The killing of Player was alleged to have been orchestrated by Proctor as retaliation for Player's testimony. Wallace was charged with the actual shooting, while Epps was charged as an aider and abetter.

A trial date was originally set for March 24, 1986. One lawyer, Michael Morrissey, Esq., entered an appearance for all three co-defendants. Upon the government's motion, a hearing was held on December 26, 1985 to resolve the potential conflict of interest arising out of the joint representation. At the hearing, the three defendants were separated and individually advised of their Sixth Amendment right to counsel free of conflict of interest. Each defendant was questioned by the Court regarding whether Mr. Morrissey had discussed the conflict issue with them. Observing the demeanor and answers given by each defendant, as well as the various potentially serious conflicts involved in the case, the Court determined that none of the defendants had satisfactorily demonstrated an ability to make a voluntary, knowing and intelligent waiver of their rights to have independent counsel appointed. (Tr. 20) In addition, the Court concluded that there existed the possibility of some taint to continued representation by Mr. Morrissey. (Tr. 21) The Court therefore appointed separate counsel to represent each defendant. Order of January 2, 1986, Crim.Case No. Y–85–0547.

On the eve of trial, Epps indicated a desire to retain William H. Murphy, Esq. as his counsel. In order to accommodate this request, the Court ordered that the trial date be continued to May 17, 1986. However, on the morning of May 17, Mr. Murphy, for the first time, indicated a potential conflict in his representation of Epps due to his former representation of one of the governments witnesses, one Rita Hamlet. The Court thereupon severed Epps from the trial and proceeded with the trial of Wallace and Proctor. Wallace was thereafter convicted by the jury verdict, however, the jury reached an impasse in considering the involvement of Proctor resulting in a mistrial. Proctor was later joined with Epps in a second trial.

On June 10, 1986, the Court held a further hearing on the issue of Mr. Epps' representation. At that time, Mr. Murphy indicated that the question of whether conflict existed had not been resolved. On July 3, 1986, the Court wrote Mr. Murphy instructing him to resolve the matter and report back by July 14, 1986. On July 15, 1986, no response having been received, the Court initiated the process of finding other representation for Epps. A final hearing on the matter of Epps' representation was held on July 22, 1986. At the conclusion of this hearing, finding additional potential for a conflict in the manner of Mr. Murphy's payment, and again finding Epps incapable of a voluntary, knowing and intelligent waiver of his Sixth Amendment rights, the Court excused Mr. Murphy from the case and set a new trial date for September 15, 1986. Soon thereafter, Epps chose Rudolph R. Hill, Jr., Esq., to represent him at trial.

On September 26, 1986, after hearing evidence presented at trial, a petit jury of this Court convicted Epps under all four (4) counts of the indictment. On November 13, 1986, Epps was sentenced to consecutive terms of imprisonment, adding up to a total term of life plus fifteen (15) years.

■ Petitioner first contends that the actions of the Court in excusing Messrs. Morrissey and Murphy constituted a denial of his right to knowingly and intelligently waive his right to defense counsel free from any conflict of interest. However, Petitioner does not specifically challenge the Court's finding that an actual or potential conflict existed with regard to both attorneys. Indeed, it is clear from the record that no set of circumstances could have resolved the "taint" upon the representation of Mr. Morrissey incident to his pretrial communications with all three codefendants. It is further clear that the Court afforded Mr. Murphy ample opportunity to resolve the potential conflict disclosed on May 17, 1986, and after two

months had passed, Mr. Murphy still had not resolved the conflict. Because an apparent conflict existed prior to the July 22, 1986, statements of Mr. Murphy regarding the form of his payment, questions regarding the admissibility of those statements as an evidentiary matter are immaterial with respect to the validity of the Court's determination that a conflict or apparent conflict existed.

Petitioner correctly cites *United States v. Garcia*, 517 F.2d 272 (5th Cir.1975) and *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) as authority for the right of an accused to voluntarily, knowingly and intelligently waive his right to conflict-free counsel. However, the suggestion that this Court failed to afford Petitioner the opportunity to demonstrate his ability to make a voluntary, knowing and intelligent waiver is overwhelmingly contradicted by the record. In sharp contrast to the circumstances presented in *United States v. Duklewski*, 567 F.2d 255 (4th Cir.1977),[1] the Petitioner was afforded, not one, but *three* opportunities to satisfy this Court that his desire to retain Messrs. Morrissey and Murphy was based on "an intentional relinquishment or abandonment of a known right". *Garcia*, 517 F.2d, at 276. The reasons supporting the Court's determination that the *Garcia* standard had not been met are exhaustively set forth in the January 2, 1986, and July 21, 1986 Orders and need not be repeated herein.

Furthermore, Epps' contention that the Court imposed its own choice of defense counsel is without merit since the attorney who ultimately represented Epps at trial, Rudolph Hill, Jr., Esq., was chosen by Epps and not by the Court.

Petitioner's second ground for relief is that the Court unconstitutionally restricted his peremptory challenges and conducted an improper or inadequate voir dire of the potential jurors. In particular, Epps con-

---

1. In *Duklewski,* the Fourth Circuit held that the defendant was denied an opportunity to knowingly and intelligently waive his Sixth Amendment right to conflict-free counsel when the court denied the defendant's requests for information regarding the nature of evidence supporting the court's conflict of interest determination which was presented by the government during an *ex parte* hearing and kept under seal.

tends that the questions propounded to the potential jurors were insufficient to allow the Court to objectively determine the possible effect of pre-trial publicity upon the the prospective jurors' impartiality.

Among the numerous questions asked by the Court on voir dire were the following:

> THE COURT: ... I would ask if any of the members of the petit jury have any knowledge about any facts of this case, if you know anything about it, if you have ever read anything about it, if you have ever talked to anybody about it, if anybody has ever talked to you about any facts of this case.
> THE JUROR: John Myles, 318.
> THE COURT: You know something about it?
> THE JUROR: I am a correctional sergeant at City Jail.
> THE COURT: Thank you. That's all right. Thank you. Any others?

(Tr. 36) There were no other affirmative responses. Mr. Myles, along with nine (9) other jurors, was thereafter struck for cause by the Court.

Petitioner further argues that the Court unduly restricted his right to peremptory challenges by "refusing to apprise him of the method chosen in it's system of jury selection". Petitioner's brief, at 25. However, Petitioner fails to indicate where on the record such a "refusal to apprise" occurred, or at what point his peremptory challenges were restricted. Instead, Petitioner strings together a series of quotations from the headnotes of *United States v. Sams*, 470 F.2d 751 (5th Cir.1972); *United States v. Nell*, 526 F.2d 1223 (5th Cir. 1976) and other cases, while failing to produce any evidence that similar prejudice to his right to peremptory challenges occurred in the instant case. Accordingly, the Court will deny Petitioner's collateral attack based upon improper voir dire.

■ As his third basis for relief, Petitioner contends that the government knowingly used false evidence to convict him. Specifically, Petitioner argues that the testimony of three of the government's witnesses at trial was contradicted by their own previous testimony to the grand jury.

On this basis, Petitioner contends that the government knew that the testimony of these witnesses presented at trial was false or perjured. However, as the government correctly observes, Petitioner made an identical argument on appeal to the Fourth Circuit. *See United States v. Leonard Epps*, 856 F.2d 187 (4th Cir.1988) (affirming conviction). Issues disposed of by the court of appeals on appeal from the original judgment will not be re-reviewed under a motion to vacate sentence. *United States v. Rowan*, 663 F.2d 1034 (5th Cir. 1981); *United States v. Grasso*, 612 F.2d 575 (3d Cir.1980); *Jones v. United States*, 364 F.2d 502 (4th Cir.) *cert. denied* 385 U.S. 1014, 87 S.Ct. 727, 17 L.Ed.2d 550 (1967).

■ The fourth issue raised by Petitioner involves a challenge to the sufficiency of the evidence produced by the government to prove or establish his citizenship as a necessary element of Title 18 U.S.C. § 241. It is well-settled that questions of sufficiency of evidence are not reviewable in a § 2255 proceeding for vacation of judgment of conviction. *Nick v. United States*, 531 F.2d 936 (8th Cir.1976); *Davis v. United States*, 392 F.2d 291 (10th Cir.) *cert. denied* 393 U.S. 986, 89 S.Ct. 461, 21 L.Ed.2d 447 (1968); *Sonnier v. United States*, 314 F.2d 69 (4th Cir.1963). Because Petitioner's third and fourth grounds for relief are improperly before the Court, these challenges based upon averments of falseness and insufficiency of the evidence will be denied.

■ Finally, Petitioner contends that he was denied the effective assistance of counsel and accordingly denied a fair trial. Petitioner specifically argues that ineffectiveness is demonstrated by his counsel's failure to summon or investigate allegations of certain material witnesses, namely: Patricia West, William Blanks (Chops), Paula Ann Bailey, Horace Hannah and Edwin Tucker. Petitioner further argues that his counsel failed to challenge the citizenship element of the 18 U.S.C. § 241 offense and "erroneously stipulated to a question of

law." [2]

In light of the foregoing problems relating to the representation of Epps incurred during the earlier stages of this litigation, the matter of effective assistance of counsel must be closely scrutinized. The standards applicable to the ineffective assistance claim have undergone an evolutionary process of change in recent years as aptly demonstrated by Petitioner's review of the authorities in this area. Petitioner's brief, at 44–48. However, much of the uncertainty relating to the proper measure of defense counsel's performance has been resolved by the recent Supreme Court decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (O'Connor, J.).

In *Strickland*, the Court established a "two-pronged" test for determining whether defense counsel's assistance was so defective as to require reversal of a conviction and sentence.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S., at 687, 104 S.Ct., at 2064. Under the first prong, the "counsel" guaranteed by the Sixth Amendment is read to mean "a reasonably competent attorney". *Id.* (citing, *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)). Thus, the defendant must initially show that defense counsel's representation fell below an objective standard of reasonableness. Such a standard is essentially a continuation of the objective measure of attorney performance unanimously adopted by the Courts of Appeals. The

*Strickland* Court affirmatively rejected more specific guidelines as inconsistent with the generic reference to "counsel" within the language of the Sixth Amendment. *Strickland, supra*, 466 U.S. at 688, 104 S.Ct. at 2064.

Upon reviewing the trial record and the transcript of the November 13, 1986, hearing on the defendants' joint motion for a new trial, this Court finds that the representation of Petitioner prior to, during, and subsequent to the trial was well within the range of reasonable effectiveness as delineated by case law and prevailing professional norms. This conclusion results from reviewing all the circumstances of this case as required by the *Strickland* analysis. 466 U.S., at 688, 104 S.Ct. at 2064.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Strickland, supra*, at 689, 104 S.Ct. at 2065.

The trial of this matter was conducted over a period of nine (9) days and involved testimony or documentary statements from a list of more that sixty (60) witnesses. Fourteen (14) witnesses were listed by counsel for the Petitioner, and seven (7) of these were specifically listed as alibi witnesses. (Tr. vol. III, pp. 19–21). The manner of questioning by defense counsel, both on direct and cross examination, exhibited a high level of preparation. Such preparation is also evident in the documentary evidence presented by defense counsel.

Although Petitioner is correct in his assertion that the credibility of the government's witnesses was a key issue for the consideration of the jury, professional standards of representation do not require defense counsel to present testimony which is likely to be merely cumulative of evidence

---

**2.** It appears from arguments presented under the fourth ground for relief that the "question of law" referred to by Petitioner under the ineffec-

tive assistance claim pertains to the legal sufficiency of the citizenship evidence presented by the government. Petitioner's brief, at 37–38.

already adduced during the course of the trial. *See United States v. Johnson,* 596 F.2d 147 (5th Cir.1979).[3] Thus, counsel's initial decision to refrain from further investigation of witnesses such as Edwin Tucker and Horace Hannah may be considered reasonable under the circumstances. Although the testimony of these witnesses may not have been entirely immaterial, the decision not to call them at trial was a matter of strategy resulting from the exercise of reasonable professional judgment. Similarly, defense counsel's decision to stipulate with respect to the citizenship element of § 241 was not unreasonable under the circumstances.

Because the Court·finds that Petitioner has failed to demonstrate any deficiency in the performance of defense counsel, it is unnecessary to determine whether Petitioner suffered actual prejudice under the second prong of the *Strickland* analysis. For the foregoing reasons, Petitioner's challenge based upon ineffective assistance of counsel will be denied.

### ORDER

In accordance with the attached memorandum, it is this 16th day of January, 1990, by the United States District Court for the District of Maryland ORDERED:

That Petitioner's Motion pursuant to 28 U.S.C. § 2255 BE, and the same IS, hereby DENIED.

---

**3.** Upon hearing testimony of Edwin Tucker and Horace Hannah during the November 13, 1986 hearing on defendants' motion for a new trial, this Court concluded that the evidence was merely cumulative of other testimony introduced on behalf of the defendants.