ISOM, Associate Judge,
Concurring.
I concur with the majority’s decision that the revocation of probation must be reversed and this matter must be remanded for a new hearing. In order to more fully understand the background of this case, I believe a more thorough recitation of the surrounding facts may be of assistance.

FACTS

On January 10, 2005, M.D.B. entered a plea of guilty to a charge of misdemeanor battery in case number CRC04-09189 and adjudication was withheld. On May 12, 2005, the juvenile court conducted a pread-judicatory hearing conference on two unrelated juvenile delinquency cases[2] which were scheduled for disposition on May 18, 2005. It had been anticipated that at the preadjudicatory hearing conference M.D.B. would be entering a plea in those cases. However, when M.D.B. failed to enter a guilty plea, the juvenile court added an arraignment on the allegation of violation of juvenile probation in case number CRC04-09189. All parties appeared to have been under the mistaken impression that case number CRC04-09189 involved a felony battery.
As noted in the majority opinion, Assistant Public Defender Saunders was present in the courtroom at the time of the preadjudicatory hearing conference. He reminded the court that the previous day the court had granted the public defender’s motion to withdraw due to conflict and had appointed a private attorney to represent M.D.B. in case number CRC04-09189 and several other juvenile delinquency cases.[3]
The court’s inquiry into the ethical conflict and waiver of that conflict is set out in the majority opinion. These colloquies evidence the juvenile court’s neglect to ensure that the conflict had been resolved or it had been knowingly waived by M.D.B.
In his unsuccessful oral motion for continuance, Attorney Saunders objected to the hearing being conducted that afternoon because he did not have time to prepare. He indicated that he did not even have a copy of the affidavit of violation of probation and would not have the opportunity to obtain transcripts of previous hearings or to subpoena witnesses on M.D.B.’s behalf.
*594 In his written motion for continuance, Attorney Saunders alleged that he had been given inadequate notice and opportunity to be heard, that counsel was unable to effectively confer with the juvenile, and that further time was needed for investigation in order for counsel to be effective. This second motion was also unsuccessful. A record was made of Attorney Saunders’ assertions in support of the allegations in the motion and his argument that he needed to obtain the transcript of a previous hearing to confirm his belief that M.D.B. had already served fifteen days in secure detention for contempt of court based on the same allegations contained in the affidavit of violation. Although Attorney Las-tinger had not been discharged from the representation of M.D.B., counsel did not appear for the afternoon revocation hearing. The record does not contain an order reappointing the public defender to represent M.D.B. in case number CRC04-09189.
At the probation revocation hearing, two witnesses testified on behalf of the State: M.D.B.’s probation officer and his foster care custodian. No evidence or witnesses were presented on behalf of M.D.B. Despite conflicting and confusing testimony by M.D.B.’s foster care custodian, the court found his one day absence from school on April 22 to have been a willful and substantial violation.[4]

ANALYSIS

A. Denial of Motions for Continuance.
With regard to the allegations that the juvenile court erred when it denied Attorney Saunders’ motions for continuance, it must be acknowledged that neither the Florida Statutes nor the Rules of Juvenile Procedure provide a time frame within which a juvenile probation revocation hearing must be conducted following arraignment. However, as a general rule, a probationer should be brought to hearing on an alleged violation as soon as is practicable. Regardless, such a hearing should occur no sooner than is fair. It is clear that M.D.B. was entitled to but did not receive “a hearing that meets the constitutional standards of fundamental fairness and due process.” § 984.01(l)(e)(l), Fla. Stat. (2005).
On the day of the probation revocation hearing, M.D.B. was scheduled to be released from custody after having served the second of two sentences imposed for indirect criminal contempt for violating court imposed sanctions prior to being placed on probation in case number CRC04-09189.[5] Because of M.D.B.’s esca *595 lating behavioral referrals from school, his therapist’s inability to control M.D.B.’s behavior through medication, the lack of an effective foster care placement, and pending new law violations, the juvenile court may have wanted to expedite this proceeding in order to keep M.D.B. in continuous custody until he could be placed in a residential commitment facility. In denying Attorney Saunders’ written motion for a continuance, the court stated:
All right. This is a juvenile proceeding and this is a violation of probation. This is not a trial on a new charge. This is a ... hearing, an evidentiary hearing, on a violation of probation. The very nature of a juvenile who is on probation to correct some behavior that’s going on has to be done expeditiously.
Following the revocation hearing, Attorney Saunders asked the court about Attorney Lastinger’s appointment in order to determine who would be representing M.D.B. at the May 18, 2005, preadjudicatory hearing conference, the adjudicatory hearing, and commitment disposition. The court stated:
All right, let me tell you what we’re not going to have. On the day of [the adjudicatory hearing], we’re not going to have a substitution of counsel and I have to continue it. We’re not going to do that.
On May 18, 2005, M.D.B. entered a guilty plea to several misdemeanors and was committed to the Department of Juvenile Justice on those charges as well as on the revocation of probation in case number CRC04-09189. The name of the attorney who represented M.D.B. at that time is not in the record. After this, M.D.B. was detained an additional fifteen days pending placement in a moderate risk commitment program. If a continuance had been granted on May 12, 2005, this juggernaut may or may not have been spun off course. Nonetheless, both Attorney Saunders and M.D.B. were entitled to the opportunity to prepare an adequate defense. Attorney Saunders had approximately four hours to prepare. At the commencement of the afternoon court session, the court excused Attorney Saunders’ tardiness and acknowledged that counsel had been handling other responsibilities.
Based on the totality of the circumstances, clearly Attorney Saunders was given an inadequate amount of time in which to prepare a defense. See M.F. v. State, 920 So.2d 1252 (Fla. 2d DCA 2006). As in M.F., this was not a complex case, but the court’s actions prevented M.D.B. from receiving a hearing with fundamental fairness and due process.
As noted by the majority, generally the denial of a motion for continuance is within the sound discretion of the juvenile court. The action of the juvenile court will not be disturbed on appeal unless there is a clear showing that there has been a “palpable” abuse of discretion to the disadvantage of the accused or unless the rights of the accused might have been jeopardized by the continuance determination. See, e.g., Trocola v. State, 867 So.2d 1229, 1230-31 (Fla. 5th DCA 2004) (applying the standard of review in an adult proceeding). The “common thread” connecting cases *596 finding a “palpable” abuse of discretion in the denial of a continuance seems to be that defense counsel must be afforded a reasonable opportunity to investigate and prepare any applicable defense. Id. at 1231. Such a “palpable” abuse of discretion is clearly present in this case. In denying the motions for continuance, the juvenile court failed to afford M.D.B. and his attorney the opportunity to investigate the allegations, review M.D.B.’s court file, subpoena witnesses, order a transcript of the previous contempt of court proceedings, and prepare for the probation revocation hearing.
B. Failure to Follow Proper Procedure Regarding Appointment of Counsel.
As the majority has held, the juvenile court also erred in requiring the public defender to provide representation for M.D.B. without discharging Attorney Las-tinger and reappointing the Office of the Public Defender.[6] If the court had determined that the ethical conflict, which was the basis for the court appointing a special public defender, no longer existed, the court should have stated on the record its findings as to the ability to reappoint the Office of the Public Defender and discharge court-appointed counsel.
Furthermore, the juvenile court did not conduct an adequate inquiry into M.D.B.’s waiver of conflict-free counsel. Such a waiver must be established by clear, unequivocal, and unambiguous language. See United States v. Garcia, 517 F.2d 272, 278 (5th Cir.1975), abrogated on other grounds by Flanagan v. United States, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). The record should demonstrate that a juvenile is aware of the conflict of interest, realizes that the conflict could affect the attorney’s defense, and knows of the court’s ability to appoint conflict-free counsel. See Larzelere v. State, 676 So.2d 394, 403 (Fla.1996); Forsett v. State, 790 So.2d 474 (Fla. 2d DCA 2001); United States v. Petz, 764 F.2d 1390, 1393-94 (11th Cir.1985); Garcia, 517 F.2d at 278.
Although the juvenile court should try to elicit narrative replies, the juvenile’s recorded verbal assent in response to a series of questions posed by the court could, in some instances, constitute an adequate waiver of the right to conflict-free counsel. The determination of whether there has been an intelligent waiver of the right to conflict-free counsel will depend upon the particular facts and circumstances found, including the background, experience, and conduct of the accused. Garcia, 517 F.2d at 277. I would encourage the juvenile court to inquire as to the extent of the attorney’s investigation of the facts, knowledge of the pertinent law, the presence or absence of influence or prejudice, and any other factor material to the case. An inquiry of the juvenile in order to determine whether the juvenile is waiving the right to conflict-free counsel freely, voluntarily, and knowingly would then be necessary. The colloquy should address not only the *597 attorney’s ethical conflict but also other considerations including, but not limited to, age, emotional development, prior history of abuse or neglect, experience in previous juvenile prosecutions, educational background, the ability to confer with a parent or legal guardian prior to making the decision to waive conflict-free counsel, and the consequences of proceeding to a hearing with present counsel. I would suggest a judge presiding over a juvenile delinquency court develop a basic colloquy which could include the following inquiries:
Please state your name for the record. How old are you?
What is the last grade which you successfully completed?
Do you go to school now?
Do you know how to read and write?
Are you in any classes for kids with special needs, like emotional handicaps or learning disabilities?
Are you supposed to be taking any kind of medicine now?
If so, did you take this medicine today? What is the medicine for?
Have you had anything to eat today?[7] Before coming to court, did you drink any alcoholic beverages or take any kind of drugs?
Do you feel like you know what you are doing?
Are you feeling ill today? If so, describe your illness.
Are you in full and complete control of yourself and able to make a good decision today even though you [took medicine] [skipped breakfast] [are not feeling well]?
Do you wish to give up your right to have an attorney who does not already know about your case from one of the other kids who were arrested?
Have you spoken to this attorney?
Does the attorney appear to be on your side?
Do you want him/her to be your attorney?
Does the attorney appear to know enough about your case so that you believe you will be able to have a fair hearing?
Are you allowing this attorney to represent you because you want to?
Did anyone threaten or force you to do this?
Before deciding that this attorney can represent you, did you have enough time to talk to your parent or legal guardian so that you are sure this is what you want to do?
I would also recommend that the court conduct a brief inquiry of the juvenile’s parent or legal guardian as to the same issues prior to determining the juvenile has made a knowing and intelligent, free and voluntary waiver of the right to conflict-free counsel. If a parent or legal guardian cannot be located, the court has the ability to appoint a guardian ad litem to represent the child’s interests in making this decision. If a juvenile is in foster care and the parent’s legal rights have not been terminated, the court should determine whether the parent has been summoned as required by section 985.219(5)(b), Florida Statutes, and take steps to ensure that the parent and the juvenile’s foster care worker are notified of all court proceedings. If the court finds the juvenile meets the standard for an informed waiver, the court *598 should state on the record the basis for its decision.

. Case numbers CRC05-02712 and CRC05-03497.

. Case number CRC05-01226 (disrupting a school function, date of offense 2/4/05); case number CRC05-02403 (resisting arrest without violence, date of offense 3/18/05); case number CRC05-02712 (misdemeanor possession of marijuana, date of offense 3/31/05); case number CRC05-02826 (battery, date of offense 4/2/05); case number CRC05-02884 (misdemeanor possession of marijuana, date of offense 4/6/05); case number CRC05-03497 (resisting arrest without violence, date of offense 4/21/05).

. When it was discovered that the charge in case number CRC04-09189 was a misdemeanor battery on which M.D.B.'s secure detention could not be continued, case number CRC05-3495 (leaving the scene of an accident involving personal injury) was added to the docket for an unscheduled detention hearing. The court found probable cause in that case and continued M.D.B. in secure detention until the May 18, 2005, adjudicatory hearing.

. M.D.B. entered the foster care system six months prior to the hearing on the revocation of probation at the age of twelve having been removed from his mother’s care for neglect based on a lack of food and shelter. Prior to his removal, M.D.B. had a history of being tardy to school, but his serious truancy problem developed after he was taken into the care of the State of Florida. M.D.B. was diagnosed as having ADHD and prescribed Wellbutrin and Adderall as a result of a psychological evaluation evidently performed the same day as the battery which gave rise to this case. The November 16, 2004, battery was on a staff member of the shelter where M.D.B. and his siblings had been living since being removed from their mother's care. The incident occurred on the same day as M.D.B.’s adjudication of dependency and placement in foster care. The Department of Juvenile Justice (DJJ) predisposition reports note that M.D.B. had anger management and behavioral control problems which responded *595 to the medication, and that M.D.B. suffered from headaches and was resistant to taking medication. The original plea of guilty to this charge was made without the presence of a parent, as evidenced by the plea form, and without the benefit of legal counsel, as evidenced by the disposition order. The original order of disposition in January 2005 placed M.D.B. on "judicial sanctions,” not probation; imposed probation-like sanctions; and retained jurisdiction. The journey from adjudication as a foster child placed under the protection of the Department of Children and Family Services to adjudication of delinquency and commitment to the DJJ took M.D.B. six months.

. To demonstrate the confusion which occurred concerning the representation of M.D.B., the record contains the following exchange which took place between the court and the assistant court clerk following the afternoon revocation hearing:
CLERK: Judge, yesterday you appointed another attorney?
COURT: I know. But then — I mean, I guess we’re not — we're going to withdraw that appointment that was in the air. [M.D.B.] said that this—
CLERK: Okay. So we’re going to vacate that new appointment?
COURT: I mean unless Mr. Saunders comes back and says Mr. Gardner has decided otherwise.
CLERK: I’ll just leave it.
COURT: Just leave it and Mr. Saunders can let us know.

. Foster children who are not in detention may miss breakfast if they come to court prior to going to school.