[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 10, 2005
THOMAS  K. KAHN
CLERK

No. 04-12513
Non-Argument Calendar

_____

D. C. Docket No. 03-00095-CR-04-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEREMY RAY SIMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 10, 2005)**

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Jeremy Ray Sims appeals his conviction and sentence, pursuant to a guilty

plea, for conspiracy against rights, in violation of 18 U.S.C. § 241.  Sims argues

that his guilty plea and sentence should be vacated because his attorney was

operating under an impermissible conflict of interest, in violation of the Sixth

Amendment, by simultaneously representing Sims and two of his co-defendants.

Sims also argues that the district court:  (1) committed plain error by enhancing his

sentence, based on facts that were not charged in the indictment, proved to a jury,

or stipulated to by him, in violation of Blakely v. Washington, 542 U.S. ___, 124

S. Ct. 2531 (2004), and United States v. Booker, 543 U.S. ___, 125 S. Ct. 738

(2005); and (2) erred by granting an enhancement pursuant to U.S.S.G. § 3B1.1 for

aggravating role.  The government moves to dismiss Sims's appeal of his sentence

because he validly waived his right to appeal.   Because the record shows that Sims

knowingly and voluntarily waived his right to appeal his sentence, we grant the

government's motion as to Sims's sentencing issues.  We deny the motion as to his

counsel's conflict of interest claim but, because the record shows that Sims

knowingly and intelligently waived his right to conflict-free counsel, affirm his

conviction.

## I. BACKGROUND

Sims and five co-defendants were indicted for:  (1) conspiracy to injure,

oppress, threaten and intimidate three individuals in the free exercise of their right

to hold and occupy a dwelling without injury, intimidation, or interference because

of race, in violation of 18 U.S.C. § 241 (Count 1); and (2) by force and threat of

2

force, and by use of fire, willfully injuring, intimidating, and interfering with the same individuals in their occupation of a dwelling, on account of their race, in violation of 18 U.S.C. § 2 and 42 U.S.C. § 3631(b) (Count 2).  Specifically, the indictment charged that the plan of the conspiracy was "to erect and ignite a cross in the visible vicinity of the victims' dwelling in order to intimidate, prevent, and discourage the victims from exercising their protected rights."  R1-1 at 1-2.

During Sims's initial appearance and arraignment, Sims's retained attorney, Allen Townsend, identified himself to the court and stated that he represented Sims and two of his co-defendants.  R2 at 2, 4.  The magistrate judge addressed the issues regarding the representation of multiple clients by one attorney and conflicts of interest.  Id. at 4-5, 19-21.  He told Sims and his co-defendants that they each had "a right to be represented by a lawyer . . . [who did not] have . . . a conflict of interest . . . [and] whose loyalty is to you and not compromised by any representation of any other person."  Id. at 19.  The magistrate judge then explained some potential problems that could occur when a lawyer had a conflict, including specifically advising that such a conflict could "prevent the lawyer from arguing the relevant culpability of the defendants to the sentencing court."  Id. at 21.  The magistrate judge then individually addressed Sims and each of his co-defendants who were represented by Townsend, and inquired whether Townsend

3

had explained to them the potential conflict of interests and they each responded "yes." Id. at 2, 24. Sims indicated that Townsend told him "if there was a conflict of interest, he couldn't represent all three of us." Id. The magistrate judge asked Sims whether he understood (1) that he had a right to his own separate attorney, (2) how conflicts can arise, and (3) the potential for conflicts of interest, and Sims stated that he understood. Sims then indicated, with yes and no answers, that he: (1) did not want his own attorney to represent him; (2) wanted to be represented by Townsend despite the potential for conflicts of interest; (3) was waiving his right to a separate attorney; and (4) understood that he might "be giving up [his] claim on appeal that [his] lawyer was ineffective . . . because he had a conflict of interest." Id. at 25-26. The magistrate judge then approved the multiple representation, finding that there was no reason to believe that a conflict would arise. Id. at 26. Sims subsequently signed a written "waiver of right to conflict-free counsel," in which he acknowledged that he had:

> been told that . . . I have the right to [be] represented by a lawyer who does not have any conflict of interest.
> . . . .
> The possible problems that can occur when a lawyer has a conflict of interest have been explained to me by the Court and my lawyer.
> These problems include, . . . :
> . . . .
> (2) The government could view my role and that of the other person represented by my lawyer differently.

4

. . . .

> (4) Representing two persons in the same case or controversy may prevent the lawyer from arguing the relative culpability of the defendants to the sentencing court.

. . . .

> I voluntarily and knowingly give up my right to have a different lawyer appointed to represent me . . . .
>
> I further understand that by giving up my right to have different, separate counsel to represent me in this case, I also may be giving up the right to claim on appeal . . . that my lawyer did not provide effective assistance of counsel because he/she . . . had a conflict of interest.

R1-13 at 1-4.

Sims entered into a negotiated plea agreement in which he agreed to plead guilty to Count 1 of the indictment in exchange for the government's agreement to dismiss Count 2. The plea agreement included a sentence-waiver provision that provided in pertinent part:

> To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal his sentence and the right to collaterally attack his sentence in any post-conviction proceeding on any ground, except that the defendant may file a direct appeal of (a) an upward departure from the otherwise applicable guideline range and (b) a finding by the court that § 2K1.4(a)(1) of the Sentencing Guidelines applies to the defendant's offense conduct.

R1-28, Plea Agreement at 2. The plea agreement also contained a certification, signed by Sims, which stated that he understood:

> . . . the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. I also have discussed with my attorney the rights I may have to appeal or challenge my sentence, and I

5

understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my sentence or challenging my sentence in any post-conviction proceeding.

Id. at 7.

At the plea hearing, Sims indicated that he (1) had discussed the plea agreement with his lawyer, (2) had signed it, and (3) understood that, by signing it, he was entering a guilty plea to Count 1 of the indictment. Sims also answered affirmatively when asked by the district judge if he still wanted to proceed with Townsend as his counsel and whether he understood that he had a right to separate counsel, and Sims said "Yes." R3 at 6-7. The district court ensured that no one had coerced Sims to tender the guilty plea, and read the plea agreement and Sims's certification into the record. Sims also affirmatively responded to the district judge's inquiry as to whether it was Sims's understanding that the plea agreement read into the record was the complete agreement and whether he was satisfied with it. The district court informed Sims that he had a right to appeal to a higher court without cost but that, by entering the plea agreement, was waiving his right to appeal except as to the issues listed in the agreement. When asked whether that was what he wanted to do and whether his plea was free and voluntary, Sims replied "Yes, sir." Id. at 41-42. After observing that Sims was not under the influence of any drugs or substances that may have effected his plea, the district

6

court accepted his guilty plea as to Count 1.

According to the Presentence Investigation Report ('PSI"), at some point during the evening of 4 November 2003, Sims and his five co-defendants congregated at Sims's residence and began consuming alcoholic beverages. The conversation turned to a racially-mixed couple who was visiting the area, and the defendants agreed to construct a cross to be placed at the residence where the couple was staying and set ablaze. The defendants obtained lumber, and Sims constructed the cross, which they shrouded with cloth and doused in transmission fluid. The group then (1) put the cross in Sims's truck, (2) drove to the residence, (3) unloaded the cross at the end of the driveway, and (4) set it on fire. Later, three co-defendants returned to the scene of the crime, and, finding that the cross was not lit, successfully lit the cross and returned to Sims's residence. In an effort to attract attention to the burning cross, another co-defendant reported the incident to the police.

The probation officer set Sims's base offense level at 16, pursuant to U.S.S.G. § 2H1.1(a)(1), cross-referenced to § 2K1.4(a)(3),[1] which specifies that the offense level is 2, plus the offense level determined according to § 2B1.1,

---

[1]The guideline for a violation of 18 U.S.C. § 241 is § 2H1.1(a)(1), which cross-references the guideline for the underlying offense, arson, which is § 2K1.4(a)(3).

which was 14.[2]  The probation officer then increased this level:  (1)  by 3, pursuant to § 3A1.1(a), since the victims were selected because of their race; and (2) by 4, pursuant to § 3B1.1(a), since Sims was in a leadership role.  Based on a total offense level of 23, and with a criminal history category of I, Sims's presumptive guideline range of imprisonment was 46-57 months.

Sims objected to the § 3B1.1(a) role enhancement.  At the sentencing hearing, at which Sims alone was sentenced, Townsend argued that the four-point enhancement for a leadership role was unfair because: (1) Sims was not the leader, organizer, or supervisor of the incident; (2) it was a joint enterprise with at least four participants, two of whom arrived later; and (3) it was just circumstance that the incident involved Sims's residence and truck.  The government responded that a role enhancement was appropriate because Sims picked up two of his co-defendants, facilitated the creation of the cross at his residence, drove the truck and his co-defendants to the victims's residence, and instructed a co-defendant to come up with a story to tell the police.  The court sustained Sims's objection to the four-level enhancement, but applied a two-level enhancement, finding that Sims "exercised some management responsibility" regarding the incident.  R5 at 23-24.

---

[2]Pursuant to § 2B1.1(a)(2), Sims's base offense level was 6, but because the offense involved the conscious or reckless risk of death or bodily injury, pursuant to § 2B1.1(b)(11)(A), the resulting offense level was 14.

Sims was then sentenced to 46 months of imprisonment, and 3 years of supervised release.

## II. DISCUSSION

A. Waiver of Right to Appeal

After Sims had filed his initial brief on appeal, the government moved to dismiss the appeal, arguing that Sims validly waived his right to appeal and had raised no issues on appeal excepted from the waiver. Sims responded that, at the time when he entered his guilty plea, he was operating under an actual conflict of interest which made both the plea agreement and the appeal waiver invalid.

We review de novo the legal question of whether a defendant knowingly and voluntarily waived his right to appeal his sentence. United States v. Bushert, 997 F.2d 1343, 1352 (11th Cir. 1993). Plea agreements and accompanying waivers are permissible and, indeed, are "important components" in our criminal justice system. Id. at 1347 (internal citation omitted). An effective appeal waiver must be made knowingly and voluntarily. Id. at 1350. Therefore, "for a sentence-appeal waiver to be enforceable, [t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." Williams v.

9

United States, 396 F.3d 1340, 1341 (11th Cir. 2005) (internal quotations and citation omitted).  Specifically, we have also held that "the right to appeal a sentence based on Apprendi /Booker grounds can be waived in a plea agreement. Broad waiver language covers those grounds of appeal."  United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005).

Sims's plea agreement contained a broad sentence-appeal waiver, stating that:  "the defendant voluntarily and expressly waives the right to appeal his sentence and the right to collaterally attack his sentence in any post conviction proceeding on any ground."  See R1-28, plea agreement at 2.  Although Sims reserved the right to appeal his sentence for (1) "an upward departure from the otherwise applicable guideline range" and (2) a finding by the sentencing court that U.S.S.G. § 2K1.4(a)(1) applies to his offense conduct, he did raise issues regarding either of these exceptions on appeal.  See id.; see generally Sims's brief.  The waiver uses broad, sweeping language, and there is no indication that the parties intended to except an argument based on Booker.  See Rubbo, 396 F.3d at 1335.

The record shows that, during the change-of-plea hearing, the court read the plea agreement into the record and Sims indicated that he was satisfied with it. The court informed Sims that he had a right to appeal without any cost to him, but that, by entering the plea agreement, he was waiving his right to appeal, and Sims

10

stated that that was what he wished to do. Sims specifically swore that his plea was entirely free and voluntary, and he signed a statement that he understood he was waiving his right to appeal his sentence. Because Sims's sentence-appeal waiver was knowingly and intelligently made, he waived his arguments that: (1) his sentence was unconstitutionally enhanced based on facts not charged in the indictment, admitted by Sims, or proven to a jury, in violation of Blakely and Booker; and (2) the district court erred by enhancing his sentence based on his role in the offense.

However, it is possible that Sims has not waived his right to raise on direct appeal that his counsel was ineffective for operating under an impermissible conflict of interest because the terms of the sentence-appeal waiver do not mention or cover such a claim, which goes to Sims's conviction. See R1-28. The Supreme Court has stated that, in most cases, it is preferable to decide an ineffective assistance of counsel claim through a 28 U.S.C. § 2255 motion to vacate instead of a direct appeal. Massaro v. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694 (2003). However, we will review an ineffective assistance of counsel claim on direct appeal if the record is sufficiently developed. United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). Because the record regarding Sims's ineffective assistance claim is sufficiently developed, we grant the government's

11

motion to dismiss in part as to the sentencing issues that Sims raises, and deny in part as to Sims's ineffective assistance of counsel claim.

B.    Waiver of the right to conflict-free counsel

On appeal, Sims argues that his guilty plea and sentence should be vacated because his attorney was operating under an impermissible conflict of interest, in violation of the Sixth Amendment, since his counsel simultaneously represented Sims and two of his co-defendants.  He contends that, while he was initially advised of his right to conflict-free counsel, his waiver was inadequate because the issue was not revisited by the district court when, during sentencing, the potential conflict became an actual conflict.  He avers that an actual conflict of interest existed at sentencing because the PSI recommended that Sims's sentence be enhanced based on his alleged role as a leader, while his co-defendant, Stacy Jones, another of Townsend's clients, was not facing such a role enhancement.  He contends that a defense to such an enhancement would have demanded that his attorney harm Jones by highlighting Jones's aggravating role.  Sims maintains that his appeal is analogous to United States v. Swartz, 975 F.2d 1042 (4th Cir. 1992), in which the defendant's conviction was reversed where, although the defendant had waived her right to conflict-free counsel during the initial proceedings, such waiver was inadequate when an actual conflict developed at sentencing.   Sims

12

argues that his waiver of conflict-free counsel was not knowing or intelligent because: (1) the court should have engaged Sims, who had limited education, more to ensure that he truly understood what he was waiving; and (2) his answers to the asked questions do not demonstrate an understanding of the nature of the conflict.

We review de novo the mixed questions of fact and law regarding conflicts of interest. United States v. Jones, 52 F.3d 924, 925 (11th Cir. 1995). "A criminal defendant's right to effective assistance of counsel is violated where the defendant's attorney has an actual conflict of interest that affects the defendant adversely." United States v. Rodriguez, 982 F.2d 474, 477 (11th Cir. 1993) (per curiam). "Although a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests, such waivers are not to be lightly or casually inferred and must be knowingly and intelligently made." United States v. Alred, 144 F.3d 1405, 1411 (11th Cir. 1998) (internal quotations and citations omitted). For a waiver to be knowing and intelligent, "[t]he record must show that the defendant was aware of the conflict of interest; realized the conflict could affect the defense; and knew of the right to obtain other counsel." Id. (internal quotations and citation omitted). "A determination that defendants have waived the right to conflict-free counsel disposes of the need to evaluate the actual or potential

13

ineffectiveness of counsel caused by the alleged conflicts of interest." Rodriguez, 982 F.2d at 477.

The district court did not err by accepting Sims's plea or sentencing him despite his attorney's simultaneous representation of Sims and two of his co-defendants because Sims knowingly and intelligently waived his right to conflict-free counsel. The magistrate judge: (1) informed Sims of his right to a lawyer without conflicts; (2) explained that one of the problems with having a conflicted attorney would be that the attorney may be prevented from arguing relevant culpability to the sentencing court; (3) addressed Sims personally and elicited a statement from him; and (4) ensured that Sims understood. Sims indicated that: (1) he wished to be represented by Townsend in spite of any conflicts; (2) was waiving his right to a separate attorney; and (3) understood that he may be giving up his right to claim on appeal that his attorney was ineffective because of the conflict. Additionally, Sims: (1) certified that he was "fully satisfied with the representation provided" to him by his attorney; (2) signed a written waiver of his right to conflict-free counsel, which acknowledged that his lawyer's conflict could prevent him from arguing relative culpability at sentencing; and (3) during the change-of-plea hearing, reaffirmed his intent to proceed with Townsend as his attorney despite his right to his own counsel. See R1-13, 28, plea agreement at 7;

14

R3 at 6-7.

The record unequivocally shows that Sims (1) was aware of the conflict, and (2) knew of his right to obtain counsel. See Alred, 144 F.3d at 1411. Additionally, not only did Sims realize that the conflict of interest could affect his defense, he specifically was told, and signed a waiver that acknowledged that his counsel might be unable to argue relative culpability at sentencing, the exact claim that he is making on appeal. See id; see also R1-13. The very terms of his waiver belie his argument that he did not knowingly and intelligently waive a challenge to his attorney's alleged conflict in arguing role enhancements.

Because Sims waived his right to conflict-free counsel, we need not evaluate the actual or potential ineffectiveness of counsel caused by the alleged conflict. See Rodriguez, 982 F.2d at 477. Nevertheless, even assuming that Sims's waiver was ineffective, there is no evidence that an actual conflict arose at sentencing because Townsend: (1) objected to the probation officer's recommendation regarding the role enhancement; (2) argued that Sims was not the leader of the group; and (3) obtained a two-level reduction in the enhancement from the sentencing court. See R5 at 19-21.

### III. CONCLUSION

We grant the government's motion to dismiss in part because the record

shows that Sims knowingly and voluntarily waived his right to appeal his sentence, including any arguments related to the district court's enhancement of his sentence based on his role in the offense or based on an unconstitutional enhancement under Booker. We deny the government's motion to dismiss in part because Sims's conflict of interest argument was not specifically covered by his appeal waiver but affirm his conviction because the record shows that Sims knowingly and intelligently waived his right to conflict-free counsel.

**DISMISSED IN PART; AFFIRMED IN PART.**