

# NUMBER 13-13-00169-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

STANLEY BRADFORD WHITTINGTON,                              Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

### On appeal from the 2nd 25th District Court
### of Gonzales County, Texas.

## OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Opinion by Justice Rodriguez

A jury convicted appellant Stanley Bradford Whittington of the offense of cruelty to livestock animals by causing roosters to fight, a state jail felony. *See* TEX. PENAL CODE ANN. § 42.09 (West, Westlaw through 2013 3d C.S.). The trial court sentenced Whittington to two years community supervision and ordered him to pay a $500 fine. By

a single issue, Whittington contends that his trial counsel rendered ineffective assistance. We affirm.

## I. CONTENTIONS

On appeal, Whittington contends that his counsel rendered ineffective assistance when he represented multiple defendants at trial, causing an actual conflict of interest and prejudice to Whittington's defense. Anticipating the State's argument that he waived any conflict of interest, Whittington also asserts that "the waiver [he signed] was void and ineffective because it was not given knowingly and intelligently." Because Whittington's waiver argument is dispositive of this appeal, we will address it first. *See* TEX. R. APP. P. 47.1.

## II. WAIVER

### A. BACKGROUND

It is undisputed that on June 6, 2012, after the State filed a motion to recuse Whittington's trial counsel on the basis that he represented multiple defendants in this case, Whittington signed the following waiver of conflict:

> The undersigned Defendant, STANLEY WHITTINGTON, waive[s] in writing any conflict of interest, known or unknown, presented by the simultaneous representation of STANLEY WHITTINGTON and any and all co-defendants, by [the same attorney], and agree[s] that any such conflict cannot be asserted by me as a ground for reversal of any conviction on appeal. I have thoroughly discussed the meaning of this waiver, and have also been admonished by the Court. Inasmuch as my co-defendants and I are charged with the same criminal offense under the law of parties, I do not anticipate that any of us will resort to a blame-shifting defense, as such defense would only bolster the State's case. I have been informed by my attorney that there are no prior representations of any of the government witnesses anticipated to be called by the State which would hamper his ability to properly and thoroughly cross-examine such witnesses.

2

The undersigned does not believe that an actual conflict exists from the representation of the undersigned and my co-defendants by [the same attorney], because the interests of each of us in the outcome of this matter are not different. Given the facts of this case that I am aware of, there is no defense strategy or tactic available to me and my attorney which I am precluded from using as a result of my attorney's simultaneous representation of my co-defendants.

In the event that an actual conflict of interest does exist, I hereby waive such conflict in writing, under the authority of *Gray v. Estelle*, 574 F[.]2d 209.

At a pretrial hearing that same day, defense counsel advised the trial court that each defendant he represented and who was present in the courtroom that day, including Whittington, had executed a waiver of conflict. Defense counsel also informed the court that he would file the waivers with the clerk. Based on defense counsel's representations, the State withdrew its motion.

Six months later, the case was tried to a jury. Whittington did not object to his attorney's joint representation during trial. He made no claims of an actual conflict of interest. And Whittington did not complain about his waiver until he generally alleged ineffective assistance in his motion for new trial and then asserted conflict-of-interest concerns on appeal.

More specifically, after filing his notice of appeal, Whittington filed a timely motion for new trial, which was overruled by operation of law. Subsequently, Whittington filed a motion in this Court requesting that we abate the appeal and order the trial court to submit "findings of fact and conclusions of law regarding [Whittington's] potential waiver of any conflicts stemming from an attorney representing multiple co-defendants." We abated the appeal on Whittington's motion and remanded the case to the trial court "for purposes

3

of conducting a hearing regarding whether [Whittington] was advised regarding the 'dangers of multiple representations.'"

At the hearing, Whittington testified, in relevant part, that he and his co-defendants had pooled their money to hire one attorney to represent them in this matter. According to Whittington, after the State filed a motion to recuse, defense counsel told the defendants "that the prosecuting attorney said that the only way that he could represent [them] was for [them] to sign the waivers." Whittington testified that the first time he saw the waiver was when he signed it in the trial court's conference room on the day it was filed. The trial court took judicial notice of a certified copy of Whittington's signed and notarized waiver of conflict.

According to Whittington's testimony at the hearing, he did not know what a conflict of interest was. Whittington testified that his trial counsel did not go over anything in the waiver before he asked him to sign it and did not talk with him about a possible conflict of interest that could arise when a lawyer represents multiple people. Whittington claimed to have had no personal knowledge of any statement in the waiver prior to discussing it with his appellate counsel.

Whittington agreed with his appellate counsel that he was not advised of his right to effective representation; was not told of any potential perils of a conflict of multiple representation; and did not actually make an informed decision to waive any possible conflict. He also agreed that he did not understand the effect of the waiver, and had he known what he has learned since, he would not have signed the waiver and would have sought a separate trial. According to Whittington, his trial counsel did not tell him that he

4

could seek outside counsel regarding the waiver.    Whittington admitted that he had read the waiver paperwork his attorney gave him, but later indicated that he was not sure if he had "read over the whole thing or not."

After Whittington testified at the hearing, the trial court requested that Whittington's trial counsel and the prosecutor file affidavits, which they did.    In his affidavit, Whittington's attorney discussed the pre-trial proceedings regarding the waiver of conflict. He stated, among other things, that after the State served its motion suggesting that there was a conflict in his representation of the co-defendants who were charged with the same offense, he provided the following explanation to his defendants:

> I explained that in many cases, representation of co-defendants could give rise to a conflict, especially if their culpability was different, or if one or more decided to testify against the other in return for a reduced sentence or more favorable plea bargain.   I explained that in cases of multiple defendants, a trial could evolve into a "finger pointing" display, where each defendant would exaggerate the co-defendant's role to minimize their own role.   I explained that any of them was free to employ another attorney to represent them.

According to Whittington's counsel, after he presented this information to the defendants, all chose to continue with him as their lawyer.

Counsel stated in his affidavit that he sent each defendant a letter explaining that he saw no conflict.   Whittington's counsel set out that "each of the defendants was clear and unequivocal that they did not wish to employ other counsel."   He also claimed that Whittington received favorable plea offers, but chose not to accept them because he maintained that he was merely an observer.

Finally, Whittington's counsel avowed that when he mailed the letter mentioned above to each defendant, he included a waiver of conflict, both of which he attached to

5

his affidavit. In his letter, he informed each defendant that if he or she chose to execute the waiver, he or she should take it to the courthouse on the next appearance date and sign it in front of the judge's secretary who was a notary public. Whittington's counsel concluded his affidavit by stating that he believed that he "accurately identified the potential risks and conflicts of interest, none of which, in [his] opinion, materialized at the trial."

The prosecutor's affidavit stated that he expressed his concern to Whittington's counsel regarding his multiple representation of the co-defendants in this case and filed a motion to recuse trial counsel for all but one of the defendants. The prosecutor explained that, in response, counsel spoke with his clients, including Whittington, advising them of the dangers of multiple representation and that counsel produced waivers from all of his clients, including Whittington, "giving up their right to conflict-free counsel." The prosecutor concluded his affidavit as follows: "[a]ccording to the events I observed, through his counsel Whittington was made aware of the dangers and actively opposed my efforts to remove any appearance of conflict from his representation in a criminal case by waiving his rights."

Based on the affidavits and on Whittington's testimony at the hearing, the trial court made findings of fact and conclusions of law in compliance with this Court's order of abatement. The trial court specifically found that "[t]his [c]ourt was the trial court for the entire case, including the jury trial, and observed no conflict of testimony or trial strategy among the co-represented defendants." It also found that defense counsel "explained the dangers of multiple representations to each defendant and that they were free to

6

employ other counsel," but declined to do so. The trial court determined that the affidavit of Whittington's trial counsel and the representations made within it were credible and to the extent that Whittington's hearing testimony contradicted his trial counsel's affidavit, that testimony was not credible. The trial court concluded its findings and conclusions with the following: Whittington "was properly advised regarding the dangers of multiple representation, understood the advice, and voluntarily waived his right to secure separate counsel." After the trial court filed its findings of fact and conclusions of law with this Court, we reinstated the appeal.

## B. Applicable Law

While we usually analyze ineffective assistance of counsel claims under the *Strickland* standard, when an appellant asserts that the ineffective assistance derived from a conflict of interest, a separate standard articulated by the United States Supreme Court in *Cuyler v. Sullivan* applies. 446 U.S. 335, 348–50 (1980); *see Strickland v. Washington*, 466 U.S. 668, 689 (1984). In *Cuyler*, the Supreme Court held that for an appellant to prevail on an ineffective assistance claim, he need only show that his trial counsel "actively represented conflicting interests" and that counsel's performance at trial was "adversely affected" by the conflict of interest." *Cuyler*, 446 U.S. at 348–50. An actual conflict of interest exists if counsel is required to make a choice between advancing a client's interest in a fair trial or advancing other interests to the client's detriment. *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997) (en banc).

Nonetheless, even if a conflict of interest exists, a defendant may waive his right to conflict-free counsel so long as the record demonstrates that the defendant knowingly

7

and voluntarily waived his right to conflict-free counsel. *Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex. Crim. App. 1981) (en banc); *see United States v. Greig*, 967 F.2d 1018, 1021 (5th Cir. 1992) ("For a waiver to be effective, the record must show that the trial court determined that it was knowingly, intelligently, and voluntarily done[.]"); *Ramirez v. State*, 13 S.W.3d 482, 487 (Tex. App.—Corpus Christi 2000, pet. dism'd) (same). The record should show that the defendant was aware of the conflict of interest, realized the consequences of continuing with such counsel, and was aware of his right to obtain other counsel. *Ex parte Prejean*, 625 S.W.2d at 733 & n.6 (citing *Gray v. Estelle*, 616 F.2d 801, 804 (5th Cir. 1980)). Moreover, in this case, because the trial court based its findings, at least in part, on the credibility and demeanor of Whittington when he testified at the hearing and on counsel's actions at trial, we will review the trial court's decision regarding conflict of interest and waiver under the abuse of discretion standard. *See Ex parte Meltzer*, 180 S.W.3d 252, 256 (Tex. App.—Fort Worth 2005, no pet.) ("[T]he trial judge indicated that his decision[, in this habeas corpus proceeding,] was based upon his 'knowledge of the procedural history of the case, the observations of [Appellant] at the time of her plea of guilty, and the testimony adduced at the hearings in this cause.' Therefore, because the trial court's decision was based at least in part on the credibility and demeanor of the witnesses and [a]ppellant, we will review the trial court's ruling under the abuse of discretion standard."); *see also Wheat v. United States*, 486 U.S. 153, 164–65 (1988) (standing for the proposition that the decision to accept or reject a waiver rests within the sound discretion of the trial court).

**C.  Discussion**

8

In its findings and conclusions, the trial court indicated that it "was the trial court for the entire case, including the jury trial." It concluded, "[Whittington's trial counsel] at all times conducted himself professionally and appeared to be a knowledgeable and conscientious lawyer." The trial court also concluded that it "observed no conflict of testimony or trial strategy among the co-represented defendants."

Furthermore, the trial court found counsel's "representation about his advice to [Whittington was] credible." And in his affidavit counsel averred that: (1) he had discussed with all defendants the meaning of the State's motion that suggested there was a conflict in his representation of the co-defendants; (2) he explained that the representation of co-defendants could give rise to a conflict, especially if culpability was different or if one decided to testify against another; (3) he informed the defendants that "any of them was free to employ another attorney to represent them"; (4) he wrote and mailed a letter dated June 1, 2012, to each defendant "explaining that, based on the representations of each of them," he saw no conflict and attached the letter to his affidavit; (5) in the June 1 letter, counsel set out that "the law provides that if a defendant is made aware of the potential conflict which could arise from representation of multiple defendants, it also provides that a defendant in a criminal action can make an informed, knowing choice to waive, or give up, any potential conflict," and he included a copy of a waiver of conflict. This is the advice that the trial court found credible. It also found that Whittington's testimony was not credible, as far as it conflicted with his trial counsel's affidavit.

Relevant to the voluntariness of Whittington's waiver of any conflict, the trial court

concluded that his attorney properly advised Whittington regarding the dangers of multiple representation and that Whittington understood the advice. In other words, the trial court found that Whittington was aware of the conflict of interest, if any, or at least any potential conflict of interest, and realized the consequences of continuing with his counsel's representation. *See Ex parte Prejean*, 625 S.W.2d at 733 & n.6 (citing *Gray*, 616 F.2d at 804). And the trial court found that Whittington was aware of his right to obtain other counsel. *See id.*

The record demonstrates that Whittington knowingly and voluntarily waived his right to conflict-free counsel. *See Ex parte Prejean*, 625 S.W.2d at 733; *see also Greig*, 967 F.2d at 1021; *Ramirez*, 13 S.W.3d at 487. Because the record supports the trial court's findings and conclusions, which are based, in part, on the credibility and demeanor of the witnesses and counsel, we conclude that the trial court did not abuse its discretion when it determined that Whittington voluntarily waived his right to secure separate counsel. *See Ex parte Meltzer*, 180 S.W.3d at 256; *see also Wheat,* 486 U.S. at 164–65. Therefore, even were we to conclude that an actual conflict arose during the trial of this case, we further conclude that Whittington voluntarily waived "any conflict of interest, known or unknown, presented by [counsel's] simultaneous representation of [Whittington] and any and all co-defendants," as set out in the waiver Whittington executed.

We overrule Whittington's sole appellate issue on the basis that he waived his right to conflict-free counsel. We need not address the merits of Whittington's contention that there was an actual conflict of interest because it is not dispositive of this appeal. *See* TEX. R. APP. P. 47.1.

10

### III. CONCLUSION

We affirm.

NELDA V. RODRIGUEZ
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 19th
day of February, 2015.

11